## No. 1241.

### SUCCESSION OF J. C. BLAKEMORE.

The placing, or putting aside, by a testator, of his will among worthless papers, in a secured place, the same being found undefaced and intact, is not a fact from which the intention of revocation can be inferred.

The sale of property bequeathed does not carry the revocation of the legacy made of it, when it is clearly proved that such was not the intention of the testator, as in the case of a simulated transfer acknowledged by the vendee, the property returning to the testator, and being *in esse* at his death.

The law is indulgent to testators, who are deemed *inopes consilii.*

Succession of Blakemore.

The intention of the testator must be sought, and when ascertained, must be enforced when not violative of law.

The disposition by which a testator bequeathed real estate, which he owns in one State, to certain parties, and the real estate and perishable property belonging to him in another State, which constitutes the residue of his estate, contain a special legacy and a universal legacy:

The beneficiaries under the latter are entitled to inherit, take and have, as well the property *in esse* at the date of the will, as that acquired subsequently, and in being at the opening of the succession.

APPEAL from the Sixth District Court Parish of Morehouse.
Baird, J.

G. H. *Ellis* for Plaintiffs and Appellants:

1. Under the laws of Louisiana legatees are divided into three general classes, viz.: Universal legatees, legatees under a universal title, and legatees under a particular title. C. C. 1606, 1612, 1622.

2. A universal legatee is one to whom the testator bequeaths his entire estate, after deducting the portion reserved by law to forced heirs, also the special or particular legacies, and legacies under an universal title. 35 An. pp. 708, 1054, and authorities there cited.

3. A legatee under a universal title is one to whom the testator bequeaths a fixed portion of all his immovables, or all his movables, or both. C. C. 1612.

4. A special or particular legatee is one to whom the testator bequeaths a specific thing, a fixed amount, or quantity. C. C. 1625.

5. In the interpretation of wills, the intention of the testator should be ascertained and enforced. All other rules are subordinate. Judge Story says: "The lawful intention of the testator is the pole star to guide courts in the exposition of wills." Coin Delisle says: "The intention of the testator is the trail the judge should follow in all its turns and meanderings." C. C. 1712; 8 L. 489; 3 An. 705; 8 An. 252; 35 An. ——.

6. In case of obscurity or ambiguity, as to the legatee or the amount, or the thing given, recourse must be had to extraneous evidence, and the intention of the testator ascertained from all the surrounding facts and circumstances. C. C. 1714, 1715, 1716, and 1717.

7. Where a testator owns a large estate of personal and real property in Louisiana, where he resides, valued at $12,000 or $15,000, and owns certain property in Tennessee valued at $500, and owns no property in any other State or country, and bequeaths the property in Tennessee to certain legatees, and all his property in Louisiana to certain legatees, it was clearly his intention to bequeath to the legatees in Tennessee a certain thing, and to institute the legatees in Louisiana his heirs and universal legatees. The mention of the States was for the purpose of describing where his property was situated.

8. The different States or locations where a testator's property is situated is immaterial in arriving at his intention. If he fails to state in his will where his property is situated, it is then a matter of proof. Should he state it, it is merely for the convenience of the legatees, and the more specifically to show his intention as to the dispositions contained in his will.

Succession of Blakemore.

*Newton & Cason* and *J. P. Madison* for Opponents and Appel‑lees:

"A disposition couched in terms present and past does not extend‑to that which comes afterward. For example, a legacy of all the books a testator possesses does not include those he has purchased *after the date of the testament.*" C. C. 1720. The only exception the court has ever made to this rule is in favor of universal legatees. Succession of Burnside, 35 An. 708.

A testimony disposition which does not include the totality of the property of a succession, or all its movables or immovables, or an alequot part of one or the other, is a special legacy. C. C. 1606, 1612,1625; 4 Marcade No. 119; 12 An. 606; 30 An. 271.

No one is a universal legatee to whom lapsed legacies would not enure—this is a crucial test. 35 An. 708 and authorities cited.

Had the testator disposed of his property in Louisiana, and invested in real estate in Tennessee, the heirs of J. Haywood and H. C. Blakemore could, with as much plausibility, claim to accede to all the property as universal legatees as can the applicant in this case. Had he disposed of his property in both Louisiana and Tennessee, and invested in property in another State, his legal heirs would have inherited his entire succession. If, however, the applicants were universal legatees, they would accede to the property, however much it might have been changed or augmented by investments elsewhere. Succession of Marks, 35 An. 1054.

When it is doubtful whether a greater or less quantity has been bequeathed, it must be decided in favor of the less. C. C. 1717.

When an immovable has been bequeathed, subsequent augmentations, though contiguous, can not be considered as making a part of the legacy. C. C. 1637.

A donation *inter vivos* or sale subsequent to the date of a testament operates its revocation for all that has been thus disposed of. C. C. 1695.

A tacit revocation of a testament results from any "act which supposes a change of will." C. C. 1691; Succession of Louis Muh, 35 An. 394.

---

The opinion of the court was delivered by

BERMUDEZ, C. J. This controversy arises among the collaterals of the deceased and involves the interpretation to be placed upon his will, which is in the olographic form.

The application of two of his nephews for the probate and execution of the will was resisted by the collaterals on several grounds:

1. That the testator has ignored it by throwing it aside, with the intention of revocation.

2. That the testator has, since the execution of it, disposed of the property bequeathed.

3. That the bequest is a special one, applying only to the property owned by the testator at the time of the will.

I.

The first opposition rests on the fact that the will, which was executed in 1880, was found, at the death of the testator, which occurred in 1890, among worthless papers, in a valise in a locked room.

A will is a solemn act, which, when clothed with the exacted forms, and not violative of law in its dispositions, must be respected and executed, unless it has been revoked and annulled in some manifest manner, indicating a repudiation of its contents by its author.

It may be revoked expressly by a subsequent testamentary disposition, by the erasure of the signature to it, by its actual physical destruction, or tacitly in an unmistable manner, by the testator himself. The mere putting it aside, intentionally or not, among worthless papers, assuredly does not even raise the shadow of the beginning of an intention to revoke it in any way.

The fact of its existence, under the circumstances of this case, suffices to justify the conclusion that the testator did not intend to recall it, and that he has not done so.

II.

The second objection is, that the testator has disposed of the property bequeathed, and that he has thereby revoked the legacy.

It is true, that the law so provides, R. C. C. 1695, but it is likewise so that it is inapplicable to the facts established in the record.

There is evidence showing a sale of the property by the testator to a certain party, on certain terms of payment, part cash and part on credit; but the purchaser admitted that the transaction was a simulation, and the proof is, that the property was put back in the vendor's name, by the vendee.

It appears that the ceremony was resorted to by the vendor, not at all with a view of divesting himself absolutely of all title to it, but, on the contrary, for the purpose of placing it beyond a threatening danger, and thus of preserving it; possession continuing on him uninterruptedly.

"La vente n'entrainera pas la révocation du legs, s'il est évidemment prouvé par les circonstances que telle n'a point été l'intention du testateur." Pandectes françaises. C. N. annoté par Lahaye, art 1038, p. 468, note.

### III.

The third objection is, that the bequest is *special,* applying only to the property owned by the testator at the time of the will.

In point of verbiage, orthography and punctuation, the will is far from being artistic; but, however drawn up, it is sufficiently clear and expressive, to make known the intentions of the testator unequivocally.

The proof shows that, at the date of the will, 1880, Blakemore owned property in Tennessee and Louisiana, and nowhere else.

He was a bachelor and had raised three nephews, sons of a deceased widow sister, for whom he felt a great attachment.

He was not on good terms with his brothers, and so indisposed, that he was unwilling to leave them any share in his succession.

He, however, resented no ill feeling against the children of J. H. Blakemore and H. C. Blakemore, but was rather kindly inclined to them.

When he drew up his will on the 25th of November, 1880, he was under a presentiment of an early death, which was not, however, verified.

His intention was to dispose, *mortis causa,* of all his property, which consisted of that in Tennessee and that in Louisiana.

That in the first State he disposed of in the following words: * * * " my real estate in Tenn I want it divided between J. Haywood & H. C. Blakemore's airs."

That in the second named State (Louisiana), which constituted the residue of his estate, he disposed of in the following terms:

" I this day giv D. A. Reas one-half of real estate and one-half of the pearishable propity and Robert Reeas the other half in La. They air to take car—J. W. Reeas the best they now how until he is of age, and he is considered to not have a good mind. I dont think it proper for me to give (him) any of my propity."

The inspiring or determining motive of the objection is, that, subsequent to the date of the will, J. C. Blakemore acquired considerable property, touching which he died intestate, and which, therefore, descends to his collaterals, as his legal heirs.

The proposition rests upon the theory that the bequest to the Reeas (Reese) is not a universal, but a special or particular legacy not susceptible of augmentation without a new disposition, and that

54

under it, the legatee takes only the property in existence at the date of the will.

It has been well observed that the law is indulgent to testators, who are *inopes consilii*. It exempts language from technical restraint and obeys the clear intention, however informally conveyed. If obscured by conflicting expressions, it seeks the intention in a purpose, consistent and rational, rather than the reverse; and, of two interpretations, it selects that which saves from total intestacy. The testator's intention is his will. This is the first rule of interpretation, to which all others are reduced. The intention must be enforced, as far as it can be done legally.

In the present instance, it is apparent that the testator designed to dispose of all his property in view of his death, which he thought was not distant, and he wanted to dispose of the whole of it, in part in favor of the children of two living brothers, and for the balance, in favor absolutely of two sons and to some extent of another son of a deceased sister, for whom he entertained special affection and tenderness.

It is manifest that the testator here did not desire that those two brothers, or any other collateral not named in the will, should inherit from him, not only because they were left out, but also because of expressions in the will, which it is not necessary to reproduce, but which are indicative of feelings other than those which cordial friendship, or even indifference, suggests.

From all the circumstances of this case, the tenor and physiognomy of the will, we are satisfied that the testator intended to institute the sons of his sister his universal legatees; that he has done so, and that it is the duty of the court to carry out fully his behest.

The argument that the bequest, being a particular legacy, embraces only the property *in esse* at the time of the making of the will and does not include future property, has no force, as the testamentary disposition is an institution of a universal legacy. Article 1722, R. C. C., has, therefore, no application.

The rulings in 12 An. 286 and 603 were obliterated in the Burnside decision, in 35 An. 708, and affirmed in 35 An. 1054, and the earlier jurisprudence was recognized and applied. 8 L. 489; 12 Rob. 56; 3 An. 705; 8 An. 252.

So that, it is law, that a universal legacy embraces as well property in being at the date of the will as that existing at the time of

death, constituting the succession of the testator, although the will expresses no time, either past or future.

From that standpoint the irresistible conclusion is, that all the property in existence at the death of J. C. Blakemore, except that in Tennessee, specially bequeathed, and which has not lapsed, has descended by the will to D. A. and Robert Reese, with the attached burden.

This consideration might have dispensed with a determination of the second objection, relative to the revocation of the bequest by the sale of the thing bequeathed. We do not think it necessary or useful to answer the question put, to know whether by the pre-decease of the legatees of the Tennessee land, that property would, by the lapse, have been also inherited by the Reese brothers.

Courts have enough to deal with existing troubles, without concerning themselves uselessly with imaginary difficulties, which, should they arise, can then be solved.

It is therefore ordered and decreed that the judgment appealed from, as far as it admits the will of the deceased to probate and execute it, be affirmed, and that in other respects it be reversed; and,

It is now ordered and adjudged that said will receive its full and entire execution, and, accordingly, that D. A. Reese and Robert Reese, named therein, be and they are hereby recognized as the universal legatees of the deceased J. C. Blakemore, and that, as such, they do have and take the residue of his succession with the burden attached to the legacy of caring for their brother J. W. Reese, and that the opponents and appellees, who have moved an amendment of the judgment in appeal, pay the costs in both courts.