Mrs. Georgie W. Rathborne, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 83106.   Promulgated May 31, 1938.

*Louis C. Guidry, Esq.,* for the petitioner.
*Allen T. Akin, Esq.,* for the respondent.

### OPINION.

Black: This proceeding involves a deficiency in income tax for the calendar year 1932 in the amount of $1,489.94. Petitioner contends there is no deficiency and that she has overpaid her tax in the amount of $3,796.12.

The petition, as originally filed, assigned as the only error the failure of the respondent to allow as a deduction from gross income in 1932 alleged worthless bonds of the Estate Securities Corporation in the amount of $6,168. In a signed stipulation the parties have

agreed that these securities "became worthless prior to the taxable year 1932 and that therefore petitioner is not entitled to deduct the said loss for the said taxable year 1932." The respondent's determination as to this issue, is, therefore, sustained.

The petition, as duly amended, assigned two additional errors, as follows:

(a) The Commissioner erred in including in petitioner's gross income for the said year 1932 the sum of $30,000 received by petitioner from the trust estate created by the last will and testament of the late Joseph Rathborne.

(b) The Commissioner erred in not finding as a fact that all of the said sum of $30,000 received by petitioner from said trust estate created by the late Joseph Rathborne was paid to petitioner by the Trustee out of tax exempt income.

The facts are set forth in a stipulation of the parties, which we adopt as our findings of fact. Only such of the facts as seem necessary to a discussion of the issues are stated herein.

Petitioner is an individual residing at Westbury, Long Island, New York, having formerly been a resident of Harvey, Jefferson Parish, Louisiana.

Joseph Rathborne, a resident of the State of Louisiana, died testate in August 1923. His last will and testament, dated June 14, 1921, was probated, proved, registered, and ordered executed on August 24, 1923, before the 28th Judicial District Court for the Parish of Jefferson, State of Louisiana. The first article of the will gave directions for the burial of the testator; the second provided for certain specific legacies of money and items of personal property, including a specific legacy to petitioner of $100,000; the third provided bequests to persons who were in the employ of the deceased; the fourth directed the payment of debts and charges and the estate and legacy taxes out of funds on hand and securities held by the deceased at his death before touching or disposing of certain timber holdings. The fifth article reads in part as follows:

*Fifth:* I give and bequeath the rest and remainder of my estate, wheresoever situated, to my two grand-children, Joseph Cornelius Rathborne and Kathlyn George Rathborne, share and share alike, including herein their legitime, the whole in trust however, as hereinafter set out.

I hereby create a trust for the said rest and remainder of my estate and for the universal legacy aforesaid and I give and bequeath the said residue of my estate wherever situated to Canal-Commercial Trust & Savings Bank and to any Trust Bank succeeding to the same, in trust however, for the use and benefit of the said universal legatees, my said grand-children, Joseph Cornelius and Kathlyn George Rathborne, and within the limitations and under the conditions and restrictions hereinafter imposed to-wit:

The language immediately following that just quoted gave directions to the trustee regarding the sale of the shares of stock owned by the testator and the preservation of the investment made in certain

timber holdings. The sixth article left certain general instructions with the trustee in regard to securities left at death, and in the last sentence it provided as follows:

The Trustee may from time to time and as required take from and pay out of the capital of the estate any sums of money needed for any of the purposes contemplated by this will or to make up deficiencies in revenues and needed for the payment to beneficiaries as hereinafter set out.

The seventh article made provision for the payment to petitioner of $30,000 per annum in language as follows:

*Seventh:* Trustee shall pay out (of) the revenues of the trust estate and out of the principal, should it be necessary to trench upon the latter as authorized in article 6th hereof.

1st. To my brother, W. W. Rathborne, of Chicago, Five Thousand Dollars per annum in quarterly installments during the period of this trust.

2nd. To my daughter-in-law, Georgie W. Rathborne, the widow of my dear son, Joseph Cornelius Rathborne, Thirty Thousand Dollars per annum, payable in monthly or quarterly installments so long as she lives and until the expiration of the trust herein created, that is to say until ten years after the majorities respectively of her two children. But should she remarry, then the said allowance shall be reduced to Twenty Thousand Dollars per annum, payable in the manner above set forth.

The third, fourth, and fifth paragraphs of article seventh dealt with payments to be made to the testator's two grandchildren. The sixth paragraph of article seventh provided:

6th. In case the revenues of my trust estate should not be sufficient at any time to meet the charges imposed thereon in this paragraph the several beneficiaries shall suffer a diminution and loss of their several allowances, allowances [*sic*] in proportion to the deficiency and in case the revenue shall thereafter increase the allowances shall be resumed as provided herein.

As provided in the eighth article, the trust estate as to each grandchild was to subsist for ten years after each grandchild reached the age of twenty-one years.

The Canal-Commercial Trust & Savings Bank was named as one of three executors and also as sole trustee.

The executors have not been discharged, except that the Canal-Commercial Trust & Savings Bank, whose name was changed to Canal Bank & Trust Co., was placed in judicial liquidation on May 30, 1933, and thereupon ceased to act as executor.

The National Bank of Commerce in New Orleans was in due course appointed in the place and stead of the Canal Bank & Trust Co.

During the calendar year 1932 the trust had a total income of $181,923.33, consisting of $71,503.11 of taxable income and $110,420.22 of tax-exempt income. During that year the trustee expended from the fund of the trust estate $92,981.59 representing a deficiency in the Federal estate tax of the estate of Joseph Rathborne, $2,466.29 in taxes, $1,615.86 for brokerage and commissions, and $2,495 for

salaries of the advisory committee and caretakers. It also paid to petitioner $30,000, and to W. W. Rathborne $5,000. In the sale of securities of the trust estate a loss of $103,699.72 was incurred.

In filing her income tax return for the calendar year 1932, petitioner reported as income from fiduciaries, item 6 of her return, "Estate of Joseph Rathborne, New Orleans, La. $30,000.00."

The petition in the instant proceeding was filed on March 2, 1936.

Petitioner contends (1) that the amount of $30,000 should be excluded from gross income under section 22 (b) (3) of the Revenue Act of 1932; (2) that if it be held that this amount should not be excluded, then, nevertheless, the $30,000 was not taxable to petitioner for the reason that after paying operating charges and the Federal estate tax deficiency the trust had no taxable income to distribute, and that, therefore, the entire $30,000 was paid out of tax-exempt income of the trust; (3) and that if the two preceding contentions be, denied, then, as a further alternative, petitioner should have apportioned to her a part of the tax-exempt income of the trust. The respondent contends that his determination should be approved in all respects. We shall consider petitioner's contentions in their order.

Regarding petitioner's first contention, both parties are in agreement that, in view of *Burnet* v. *Whitehouse*, 283 U. S. 148, and *Helvering* v. *Pardee*, 290 U. S. 365, if the amount of $30,000 was payable to petitioner *at all events*, it should be excluded from petitioner's gross income under section 22 (b) (3) of the Revenue Act of 1932.[1] On the other hand, if the amount of $30,000 was to be paid to petitioner currently from income only, then, under section 162 (b) of the Revenue Act of 1932,[2] *Irwin* v. *Gavit*, 268 U. S. 161, and *Helvering* v. *Butterworth*, 290 U. S. 365, the amount of $30,000 would be deductible by the trustee and included in computing the net income

---

[1] SEC. 22. GROSS INCOME.

\* \* \* \* \* \* \*

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this title:

\* \* \* \* \* \* \*

(3) GIFTS, BEQUESTS, AND DEVISES.—The value of property acquired by gift, bequest, devise, or inheritance (but the income from such property shall be included in gross income);

[2] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\* \* \* \* \* \* \*

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year.

940

of petitioner as a beneficiary of the trust estate. Our problem then is to determine whether the amount of $30,000 was payable at all events, as petitioner contends, or was payable only out of income as respondent contends.

It is fundamental that our answer must be found in the will of Joseph Rathborne, the testator creating the trust. *Bridgeport-City Trust Co., Trustee*, 32 B. T. A. 1181, 1185; *Arthur U. Crosby et al., Executors*, 34 B. T. A. 433, 437; *Bishop Trust Co., Ltd., et al., Trustees* v. *Commissioner*, 92 Fed. (2d) 877, and that the construction of this will is controlled by the law of Louisiana, *De Vaughn* v. *Hutchinson*, 165 U. S. 566. Speaking on the interpretation of wills, the Supreme Court of Louisiana in *Succession of La Barre*, 179 La. 45; 153 So. 15 (quoted by both parties in their briefs), said:

> The testator's intention is his will. This is the primary rule of interpretation to which all others are subordinate. *Succession of Blakemore*, 43 La. Ann. 845, 9 So. 496. This intention must be ascertained from the whole will, and effect must be given to every part of the will as far as the law will permit. No part of a will should be rejected, except what the law makes it necessary to reject. Where it is a question of the choice between two interpretations, one of which will effectuate, and the other will defeat, a testator's intention, the court should select that interpretation which will carry out the intention of the testator.

What was the testator's intention in the instant proceeding? For convenience we repeat the salient provisions of his will bearing upon the point we have here to consider, as follows:

> *Sixth:* * * * The Trustee may from time to time and as required take from and pay out of the capital of the estate any sums of money needed for any of the purposes contemplated by this will or to make up deficiencies in revenue and needed for the payment to beneficiaries as hereinafter set out.
>
> *Seventh:* Trustee shall pay out (of) the revenues of the trust estate and out of the principal, should it be necessary to trench upon the latter as authorized in Article 6th hereof.
>
> * * * * * * *
>
> 2nd. To my daughter-in-law, George W. Rathborne, * * * Thirty Thousand Dollars per annum * * *.
>
> * * * * * * *
>
> 6th. In case the revenues of my trust estate should not be sufficient at any time to meet the charges imposed thereon in this paragraph the several beneficiaries shall suffer a diminution and loss of their several allowances, allowances [*sic*] in proportion to the deficiency and in case the revenue shall thereafter increase the allowances shall be resumed as provided herein.

From reading the foregoing provisions just quoted, it would seem plain that article sixth, standing alone, placed it within the sole discretion of the trustee as to whether it should invade the principal of the estate in order to make up deficiencies in revenues necessary for the payment of annual allowances provided in the will for the beneficiaries of the estate. There was in this article no mandatory requirement that the trustee should invade the principal when there

was a deficiency in income, but such was left to its sole discretion.

The first subparagraph of article seventh, standing alone, would seem to make it mandatory upon the trustee to invade the principal to pay the allowances provided for the beneficiaries in the event the revenues of the estate are not sufficient to pay them. But subparagraph six of the same article seventh would seem to make it mandatory to the trustee to cut down the allowances if the revenues of the trust estate should prove insufficient to pay them. What is the proper construction to be given to these apparently contradictory provisions?

Petitioner in support of her first contention argues that under the above provisions of the will the amount of $30,000 is payable at all events; that under the Louisiana law the annuity is a "particular" legacy and, as such, is a charge on the whole estate; and that the sixth paragraph of article seventh, when properly interpreted, is in harmony with the two foregoing propositions.

The respondent answers petitioner's arguments with a proposition which, if correct, would end this part of the controversy. He contends that the sixth paragraph of article seventh is in direct conflict with the last sentence of article sixth and the first sentence of article seventh, and that under article 1723, Merrick's Revised Civil Code of Louisiana, 3d ed.,[3] the sixth paragraph of article seventh, being the last salient provision written, "must prevail as being the last expression of the testator's intention." *Ball* v. *Ball*, 40 La. Ann. 284; 3 So. 644. Of course, if this were true, the amount of $30,000 would clearly be payable only out of income, and under section 162 (b), footnote 2, *supra*, would be "included" in computing petitioner's net income.

Although, as will appear later in this opinion, we think the amount of $30,000 should be included in computing petitioner's net income, we do not agree with the respondent that the sixth paragraph of article seventh is in conflict with any of the preceding provisions. We think this can be harmonized with the last sentence of article sixth and the first sentence of article seventh, and, if this be possible, we must so construe the will. *Succession of La Barre, supra*. We think the testator's intention, as expressed in his will, was that the trustee should satisfy the amount of $30,000 only out of income of the trust estate to the extent that the revenues therefrom were sufficient to meet all the charges imposed by article seventh, and that, in case the revenues for any year proved insufficient for that purpose, then it should be entirely discretionary with the trustee whether or not it would trench upon the principal. If the trustee decided not to trench

---

[3] ART. 1723 [1716]. *Contradictory Dispositions*. When a person has ordered two things, which are contradictory, that which is last written is presumed to be the will of the testator, in which he has persevered, and a derogation to what has before been written to the contrary.

upon the principal, then the allowances would be reduced by virtue of the sixth paragraph of article seventh.

We, therefore, have a factual situation where the payment to petitioner does not specifically fall within either one of the two classifications hereinbefore mentioned. It was not a fixed annuity in that the testator did not specifically direct that it be payable *at all events;* neither did he specifically direct that it be payable *only out of income.* During the taxable year before us the income was sufficient to meet all the charges imposed by article seventh, and the amount of $30,000 was actually paid to petitioner only out of income. Under such circumstances we think the instant proceeding is controlled by our decision in *John K. Howard et al., Trustees,* 34 B. T. A. 57. In that case a decedent by his will created a trust and directed the trustees to pay all the income therefrom to his surviving widow during her life, and also provided that:

* * * The trustees may also, in case in their discretion they deem it proper and advisable to pay to my wife from time to time any portions of the principal of the trust property in case they believe her income to be insufficient for her own reasonable individual personal needs.

During the taxable years there involved the trustees distributed the entire income of the trust to the decedent's widow, but did not trench upon any of the principal. We held that for the taxable years there before us the case was controlled by *Irwin* v. *Gavit, supra,* rather than by *Burnet* v. *Whitehouse, supra,* because there was no annuity payable to the widow in all events.

The only difference between the instant proceeding and the *Howard* case, as we see it, is that here the will provides for an annual payment of $30,000 out of income to petitioner, with authority to the trustee within its discretion to trench upon the principal of the trust estate, if there is a deficiency in income, whereas in the *Howard* case no fixed amounts were mentioned. But the so-called annuity here was not in any sense a fixed annuity. It was not payable at all events. Petitioner had no definite assurance that she would receive the full amount. She could not require the trustee to pay her the full amount. There is no real difference in principle we think between the present situation and that involved in the *Howard* case. All that we said in that case applies here with equal force.

We are not unmindful of such cases as *Arthur U. Crosby et al., Executors, supra,* and *Bishop Trust Co., Ltd., et al., Trustees* v. *Commissioner, supra.* Those cases involved fixed annuities and were not in any way restricted to the payment out of income alone. The decedents there had not directed how the fixed annuities were to be paid, and, in the absence of such express directions, the general rule that annuities may be paid from principal where the income is

insufficient was applicable. It was, therefore, held that such fixed annuities were payable at all events and were controlled by the *Whitehouse* and *Pardee* decisions. That is not the situation here.

Petitioner, in support of her argument that under the Louisiana law the annuity is a "particular" legacy, and as such, is a charge on the whole estate, cites articles 1493, 1606, 1612, 1625, 1668, and 1671 of Merrick's Revised Civil Code of Louisiana, 3d ed.,[4] and the cases of *Duke of Richmond* v. *Milne's Executors*, 17 La. 312; 36 Am. Dec. 613, and *Succession of Chedome*, 34 La. Ann. 1239. In the *Duke of Richmond* case a resident of Louisiana in his will bequeathed $100,000 to his home town in Scotland. The main point in the case was whether a bequest of this kind, being made to an alien, was valid. The court held that it was. The case did not involve annuities or any question of Federal taxation. A comparable situation to that case and the instant case would be the $100,000 which was bequeathed to the petitioner in the instant case by article second of decedent's will. That $100,000 was undoubtedly a particular legacy which was a charge upon the whole estate. That $100,000 is not involved in the instant case. But the $30,000 annual payment to petitioner which we are now considering is a situation entirely different from the $100,000 specific legacy bequeathed to her, and the *Duke of Richmond* case has no application. In *Succession of Chedome*, Marie Chedome, wife of Jacques Cornu, in her will bequeathed, first, one-fourth of her succession to the five children of her sister; secondly, four particular legacies; and, lastly, the remainder after satisfaction of the foregoing legacies, to her husband. The main question was how the one-fourth was to be computed. The court held that the legatees of the fourth were entitled to one-fourth *of the whole assets* after payment

---

[4] ART. 1493 [1480]. *Disposable Portion as to Descendants.* Donations *inter vivos* or *mortis causa* can not exceed two-thirds of the property of the disposer, if he leaves, at his decease, a legitimate child; one-half if he leaves two children; and one-third, if he leaves three or a greater number.

Under the name of *children* are included descendants of whatever degree they be, it being understood that they are only counted for the child they represent.

ART. 1606 [1599]. *A Universal Legacy* is a testamentary disposition, by which the testator gives to one or several persons the whole of the property which he leaves at his decease.

ART. 1612 [1604]. *The Legacy under a Universal Title* is that by which a testator bequeaths a certain proportion of the effects of which the law permits him to dispose, as a half, a third, or all his immovables, or all his movables, or a fixed proportion of all his immovables or of all his movables.

ART. 1625 [1618]. *Particular Legacies.* Every legacy, not included in the definition before given of universal legacies and legacies under a universal title, is a legacy under a particular title.

ART. 1668 [1661]. *Sale of Movables to Pay Debts.* In default of funds sufficient to discharge the debts and legacies of sums of money, the testamentary executor shall cause himself to be authorized by the court to sell the movables, and if they are insufficient, the immovables, to a sufficient amount to satisfy those debts and legacies.

ART. 1671 [1664]. *Heirs Take Seizin.* The heirs can, at any time, take the seizin from the testamentary executor, on offering him a sum sufficient to pay the movable legacies and on complying with the requirements of Article 1012.

of the debts, rather than one-fourth of what remained after the payment of the debts and the four particular legacies. We do not think this case is of any special importance in deciding the question involved in the instant proceeding.

Assuming that under article 1625, footnote 4, *supra*, petitioner was a particular legatee, it does not necessarily follow that what she received during the taxable year before us constituted her legacy. The so-called annuity of $30,000 mentioned in the testator's will was not, in our opinion, payable to her at all events, and was not, therefore, a charge on the whole estate. The testator made petitioner a beneficiary of the trust. She was to receive income from the trust to the extent of $30,000 a year, providing the trust earned sufficient income to meet this and the other charges provided for in article seventh of the will. If the income was insufficient to meet all the charges, the testator provided that "the several beneficiaries shall suffer a diminution and loss of their several allowances" unless the trustee should exercise the discretion given it by the last sentence of article sixth to make up the deficiencies in revenue out of the capital of the trust estate. During the taxable year before us the income was sufficient to meet all the charges, and petitioner therefore received income from the trust to the extent of $30,000. Under such circumstances we think petitioner's legacy was her right to occupy the position of a beneficiary of a trust estate, and that the amounts received by her during the taxable year should, under section 162 (b), footnote 2, *supra*, be included in computing her net income. *Irwin* v. *Gavit, supra; Helvering* v. *Butterworth, supra;* and *John K. Howard et al., Trustees, supra.*

As a first alternative, petitioner contends that the $30,000 received by her during the taxable year was, nevertheless, not taxable to her for the reason that, after paying operating charges and the Federal estate tax deficiency of $82,981.59, the trust had no taxable income to distribute, and, that, therefore, the entire $30,000 was paid to petitioner out of tax-exempt income. We deny this contention for the reason that it is the same contention that was made by another beneficiary of the same trust and denied by us in the case of *J. Cornelius Rathborne*, 37 B. T. A. 607.

As a second alternative, petitioner contends that if she be held to be a beneficiary of the trust estate, then the amount of $30,000 received by her should be allocated between taxable and tax-exempt income on the same basis as was done in the case of *J. Cornelius Rathborne, supra*, with respect to the amount of $21,905.20 paid to that petitioner, a beneficiary of the same trust, during the year 1932. In that case we held that the amount of taxable income to be allocated to petitioner J. C. Rathborne was 37.027 percent of $21,905.20, or

$8,110.84. In the instant proceeding we likewise hold that the amount of taxable income to be allocated to the petitioner, Georgie W. Rathborne, is 37.027 percent of $30,000, or $11,108.10.

The deficiency, if any, should be recomputed by including in petitioner's taxable net income for the year 1932, $11,108.10 of the $30,000 paid to her during that year.

*Decision will be entered under Rule 50.*