ELLIS, Judge.
The Rev. Jos. P. van Baast departed this life in Holland on the 7th day of October, 1956, leaving a last will and testament in olographic form, executed at Vught, Holland, on the 8th day of August, 1947 in which the following bequests were made:
“ * * * I give and bequeath to the five children of Mr. John H. Heuvel and his wife (Johanna Schuurmans maiden name) names of the five children: Elizabeth, Leo, Mary, Johnnie and Joseph, all my shares of stock in the ‘First National Bank of Donaldsonville Ld U. S. A. and also One Thousand dollars of the money now deposited to my account in the above said First Nat. Bank in Donaldsonville Ld. U. S. A.
“The above names shares of stock and the one thousand dollars, to be divided equally among the above named five children. If at my death one of these five named children has died without heirs, the share of the dead child is to be equally divided among the remaining ones.
“If one of the five has died and has children, the child’s share to be equally divided among that child’s children.
“To ‘St. Joseph’s Society of the Sacred Heart for Colored Missions’ of which I am a member in good standing, I give and bequeath my policy of $400. (Four Hundred dollars) I hold in the Knights of Peter Claver Society founded by me to be paid to the Society at my death.
“Also one thousand dollars to be used for chapel windows or alters in the new Seminary in Washington, D. C. USA or anything else the Superior thinks best.
“Also five hundred dollars for Masses, to be said for the repose of my soul. These monies to be drawn from the ‘First Natl. Bank of Donaldsonville, Ld. U.S.A.
“To Mrs. Lise Thomas-Plaisance my old housekeeper (if she outlives me) or else to her daughter Miss Lise Plaisance, I give and bequeath: All the money she has deposited in the First National Bank of Don-aldsonville, La. USA in a separate account, which I have given her authority to handle. (Emphasis added.)
“When I am dead I forbid anyone to embalm my body. I want no flowers at my funeral, a plain simple coffin and I want to be buried in a Solemn High Mass. Following my funeral I desire an Octave of Masses, as is the custom a month’s mind for a year and an Aniversery Mass.
“I also bequeath to the Pastor of the Church where I’ll be buried five hundred dollars for Masses, one to be said each week till all are said. I want a headstone on my grave with this inscription:
REV. JOS. P. VAN BAAST, S. S. J. ORDAINED IN BALTIMORE MD. USA JUNE 21, 1904 DIED . FOR 43 YEARS MISSIONRARY AMONT THE NEGROES IN U. S. AMERICA
R.I.P.
All funeral expenses in Church on graveyard and Masses, all other accessories toward the funeral to be paid by my bank accountin the First Natl. Bank of Donald-sonville La U.S.A. All my remaining monies in the ‘First Nat. Bank of Donaldson-ville La USA in the Rotterdamsche Bank in Vught or in den bosch (Holland) the money I have on my person or in my clothes all my U.S.War Bonds or Saving Bonds, now in a box rented deposel box from the Rotterdamsche Bank, Kantoor’s-Hertogenbosch. Some old Bonds, yet in the First Natl. Bank of Donaldsonville Ld. USA. (if they are yet of value) I will and bequeath to my four brothers Kees, Hendrik, Marinus and Jan. To each I will *508 an equal share, Hendrick is dead, his share shall be divided among his four children, Mina, Piet, Willem and Jan.
“If any of my three living brothers, Kees, Marinus or Jan dies before me, the share of each shall be divided among the children of each equally. Willem, the son of Marinus is dead, his share equally to be divided among the living children of Wil-lem, now six in number.”
No executor having been named in the will, the First National Bank of Donald-sonville, Louisiana was appointed testamentary executor of the will, duly qualified as such, and caused an inventory of the effects of the succession to be made which is-duly filed and in the record, and the amount of property is listed in the sum of $12,297.-04 which was the amount on deposit in the-bank on the date of the death of Rev. van Baast. It is with this item that we are concerned.
The executor duly filed a provisional account which is shown to be as follows:
“Provisional Account 23rd Judicial District Court
Succession of Parish of Ascension
Rev. Jos. P. Van Baast State of Louisiana
No. 2911
PROVISIONAL ACCOUNT
Filed May 28, 1957 S/Raymond J. Carbo
Dy. Clerk of Court
GROSS AMOUNT OF INVENTORY: $17,322.04
LESS:
1. Expenses of last illness:
Hospital Physician, funeral and burial expenses paid by Herman Gerard Frank, Vught, Holland (3,276.46 guilders) $ 856.14
2. Legal Charges:
a. First National Bamk on Donaldsonville Dative Testamentary Executor, comission 433.06
b. Sims Insurance Agency, surety on bond of First National Bank 120.00
c. George R. Blum, attorney’s fees 1650.00
d. Sidney A. Marchand, Sr., curator ad hoc for absentee heirs 50.00
e. Two appraisers @ $10.00 each 20.00
f. Gonzales Weekly, advdrtising costs to date 4.64
g. Andrew J. Falcon, Clerk'of Court costs to date 7.55
h. Estimated future court costs 50.00
i. Estimated future advertising costs 5.00
3. Bequests:
a. Elizabeth Heuvel, Leo Heuvel, Mary Neuval, Johnnie Huevel and Joseph Heuvel 1000.00
b. Elizabeth Heuvel, Leo Heuvel, Mary Heuvel, Johnnie Heuvel and Joseph Heuvel (stock in First National Bank) 5000.00
*509 3. Bequests:
c. St. Joseph Society Washington D. C. for chapel windows or alters 1000.00
d. St. Joseph Society Washington D. C. for masses 500.00
e. Pastor J. A. Walen, Vught, Holland, for masses 500.00
f. Cornelius van Baast, Vught Holland, (Brother of deceased) 1525.16
g. Marinus van Baast, Vught, Holland (brother of deceased) 1525.16
h. Johannes van Baast, Vught, Holland (brother of deceased)
1525.16
H-i. Cornells Van Baast, Marinus van Baast, Johannes van Baast, Wilhelmina Josephine van Baast, Johannes Josephus van Baast, Josephus Petrus van Baast and Wilhelmus van Baast (U. S. Savings Bond) 25.00
i. Children of Hendrik van Baast, deceased brother of Rev. Jos. P. van Baast:
1. Whilelmina Josephina van Baast Schuurmans Vught, Holland 381.30
2. Johnannes Josephus van Baast, Vught, Holland 381.29
3. Josephus Petrus van Baast, Vught, Holland 381.29
4. Wilhelmus Josephus van Baast, Vught, Holland 381.29
TOTAL AMOUNT OF EXPENSES OF LAST ILLNESS, LEGAL CHARGES AND BEQUESTS: $17,322.04
“Service of the above and foregoing provisional account accepted, citation waived, all rights reserved.
Donaldsonville, Louisiana, this 27th day of May, 1957.
S/ Sidney A. Marchand, Sr,
Attorney for absent heirs
“Service of the above and goregoing provisional account accepted, citation waived, all rights reserved.
Donaldsonville, Louisiana, this-day of May 1957.”
From the above account it is to be seen that neither Mrs. Lise Thomas-Plaisance nor Miss Lise Plaisance was listed as being entitled to anything.[1]
Lise Plaisance by way of petition opposed the provisional account and alleged that as a particular legatee she was entitled to all the monies on deposit in the First National Bank of Donaldsonville under the Account of Rev. Josp. P. van Baast in the sum of $12,297.04, subject to the payment of $1000.00 to the five children of John H. Heuvel and Johanna Schuurmans.
Prior to the trial of the opposition the following stipulation was placed in the record :
“It is stipulated by counsel for the executor, The First National Bank in Donaldsonville, and by the attorney for Miss Lise Plaisance that the executor *510 was properly qualified and that the notice of the provisional accounting was properly advertised, all the delays having run, and that the opposition filed by Lise Plaisance was truly filed and is a record.
“It is further stipulated that the expenses for legal charges are proper and will be recognized by all parties.
“It is further stipulated that all the bequests with the exception of the bequests to Cornelis van Baast, Marinus van Baast, Johannes van Baast and the children of Hendrik van Baast are admitted to be true and correct, but counsel for the opposition reserves his right as for priority of payment.
“It is further stipulated that the opposing Lise Plaisance before the court is the same Lise Plaisance, daughter of Rev. van Baast’s housekeeper, Mrs. Lise Thomas Plaisance.”
The question before the Lower court as shown by his written reasons was as follows :
“The instant controversy relates to the proper interpretation to be placed upon the following provisions of the will:
“To Mrs. Lise Thomas Plaisance my old housekeeper (if she outlives me, or else to her daughter Miss Lise Plaisance, I give and bequeath:
“All the money she has deposited in the First Natl. Bank of Donaldsonville, La. USA in a separate account, which I have given her authority to handle.
“The principal difficulty here lies in the fact that the decedent had only one account in the First National Bank of Donaldsonville, and there being no separate or special account which either Mrs. Lise Thomas Plaisance or Miss Lise Plaisance had authority to handle, the executor takes the position that the bequest is null and void. Counsel for opponent on the other hand, insists that in view of all of the circumstances surrounding this bequest, that the decedent was referring simply to a separate account book which he gave to Lise Plaisance prior to his departure from Donaldsonville for Holland, and that opponent is entitled to all monies deposited by her in Rev. Van Baast’s account and entered in the account book in her possession and under her control.”
After a trial the District Court approved the account and the payment of the first five bequests and costs and expenses, however, as to the expenses of the last illness he reduced this to one-half or $428.07 and stated that his reason for doing so “ * * * is the fact that the testator died in Holland, where he left an estate the extent of which is unknown to this Court, however, the court feels that regardless of the size of the estate in Holland it should certainly bear at least one-half of the expense of the last illness.”
After the payment of the above amounts, there remained the sum of $6553.72 to be disposed of which the District Court awarded the opponent, Lise Plaisance.
The testimony revealed that prior to the retirement and departure of Rev. van Baast for Holland he had secured an ordinary deposit book from the First National Bank of Donaldsonville, Louisiana, which he had given to Mrs. Lise Thomas Plaisance and/or Miss Lise Plaisance in which was to be entered all deposits of checks and monies which he would send to Lise Thomas Plaisance to be deposited by her in the First National Bank. It is also shown that Rev. van Baast would send money directly to the bank for deposit and that these monies together with the money sent to Lise Thomas Plaisance and/or her daughter, after her death, were deposited in one account. Neither Lise Thomas Plaisance nor 'Lise Plaisance had any authority to withdraw any sums from this account. They were only given the authority to deposit it *511 in the Donaldsonville bank, and have the entry of the deposit made in the little account book which Rev. van Baast had furnished them prior to his departure. No separate account was kept of the money as deposited by Rev. van Baast directly and that deposited by Lise Thomas Plaisance or her daughter. If Rev. van Baast had made a deposit subsequent to the last deposit made by Mrs. Plaisance or her daughter on his behalf, when the latter would come with another deposit the bank would enter the individual deposit by Rev. van Baast in this account book, thereby keeping it up to date. There is nothing in the account to identify the amounts deposited by Rev. van Baast individually and directly and those deposited by Mrs. Plaisance or her daughter.
The District Court in its written reasons concluded:
“In my opinion, the key that unlocks the obscurity in the will is the bank account book. It is very unusual to have a bank book for a checking account, and I am convinced that it was testator’s intention to give to his old housekeeper or else to her daughter all the money they deposited and entered in the bank book which was given to Lise Plaisance just prior to testator’s departure for Holland and that these deposits were to be distinguished from the deposits made by testator direct to the bank; and that it was simply a misunderstanding and error on the part of the bank in not having its books reflect the deposits sent direct by testator to the bank from those sent to Mrs. Lise Thomas Plaisance and to Miss Lise Plaisance.
“It seems clear to me that the deposits entered in the bank book was the separate account which testator referred to in his will.
“To render judgment against the opponent would, in my opinion, defeat the general purpose of the will.”
From this judgment the bank has appealed.
In the main, it is the contention of the bank as testamentary executor that the clauses which are here in controversy, and we repeat same for greater clarity:
“To Mrs. Lise Thomas Plaisance, my old housekeeper (if she outlives me) or else to her daughter Miss Lise Plaisance, I give and bequeath; All the money she has deposited in the First National Bank of Donaldsonville, La. USA in a separate account, which I have given her authority to handle,”
when interpreted as written does not entitle the opponent to anything for Rev. van Baast had no separate account, nor is there any separate account, only one account in the Donaldsonville Bank, and, secondly, that neither the opponent nor her mother before her had any authority “to handle” the account in the ordinary meaning, such as the right to withdraw funds from this account.
The opponent contends that it was the intention of Rev. van Baast, and the bequest should be so interpreted as to give to her mother, and in the event of her death, to opponent, all the money they had deposited in the First National Bank of Don-aldsonville which was sent to them for that purpose by Rev. van Baast to be deposited in his account and entered in the deposit book which has been introduced in evidence herein, and that the bank made a mistake in not maintaining a separate account for the money forwarded directly for deposit by Rev. van Baast and the money deposited by opponent and/or her mother should have been in another account in the name of Rev. van Baast. Opponent further contends that the words “which I have given her authority to handle” referred to the authority which he had given opponent and her mother to deposit money sent by him to them to his account and to keep the deposit book showing the amounts so deposited.
*512 The hank counters with a contention in the nature of an alternative that the bequest was primarily “to Mrs. Lise Thomas Plaisance, my old housekeeper (if she outlives me) or else to her daughter Miss Lise Plaisance, I give and bequeath:
“All the money she has deposited in the First National Bank of
“Donaldsonville, Louisiana * * * ” (Emphasis added.)
can only be interpreted as meaning that at his death the mother was to receive only the money she, the mother, “has deposited” as of the date of the confection of the will of Rev. van Baast, but if Lise Thomas Plai-sance should die before Rev. van Baast, her daughter, Lise Plaisance, was to receive the money her mother “has deposited” in the bank as of the date of the will. It is obvious from an examination of the terms of the bequest and the fact that it is admitted that there was no separate account or authority to withdraw funds from the one account by either opponent or her mother that any and all facts and circumstances shown by the record should be examined in an endeavor to arrive at the true intention, and to give effect thereto, of the maker of the will.
There is no dispute as to the law which is set forth in the basic articles of the LSA-Civil Code as a guide to be followed in the intepretation of such a will, to-wit:
"Art. 1712: In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament.
"Art. 1713: A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none.
"Art. 1715: When, from the terms made use of by the testator, his intention can not be ascertained, recourse must be had to all circumstances which may aid in the discovery of his intention.
"Art. 1716: A mistake in the name of an object bequeathed is of no moment, if it can be ascertained what the thing was which the testator intended to bequeath.”
The rules for the interpretation of wills are clearly set forth in the Succession of Fertel, 208 La. 614, 23 So.2d 234, at page 237, decided by the Supreme Court of this state, as follows:
“One of the cardinal rules laid down by the Civil Code in Article 1712 for the interpretation of wills is that: ‘ * * * the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament.’ Another rule of interpretation of equal importance is laid down by Article 1713 of the Civil Code in these words: ‘A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none.’
“These rules have been strictly adhered to by this Court in numerous cases involving the interpretation of wills. Typical of these cases is the Succession of McBurney, 165 La. 357, 115 So. 618, holding that the first and cardinal rule among the general rules for the interpretation of wills is that the intention of the testator must be ascertained, and all other rules are only means to that end. And Succession of Wilcox, 165 La. 803, 116 So. 192, holding that the only function of the Court is to determine and carry out the intention of the testator if it can be ascertained from the language of the will.
“It is evident from a reading of the will that it was written by the testatrix without the aid of counsel. The law is indulgent in all such cases. It exempts language from technical re *513 straint and obeys the clear intention however informally conveyed. If obscured by conflicting expressions, it seeks the intention in a purpose, consistent and rational, rather than the reverse; and, of two interpretations, it selects that which saves from total intestacy. The testator’s intention is his will. This is the first rule of interpretation, to which all others are reduced. The intention must be enforced as far as it can be done legally. Succession of Blakemore, 43 La.Ann. 845, 9 So. 496.”
We will, therefore, do exactly what Article 1715 of the LSA-Civil Code says should be done where the intention of the testator cannot be ascertained, “recourse must be had to all circumstances which may aid in the discovery of his intention.”
The facts are rather simple. The Rev. Jos. P. van Baast was ordained in Baltimore, Md. on June 21, 1904 and for 43 years was a missionary in the United States. For some 23 years prior to his death he was the pastor of the Catholic Church in Donaldsonville for Negroes and conducted parochial schools in Donaldson-ville and Berteauville for the education and religious training of the Negro race. During this time he took opponent, who was then about eight years old, to live in his home in approximately the year 1923, and after that she lived in his home in Berteau-ville and Donaldsonville for approximately twenty one years, or until about 1944. He apparently took complete care of her and she received her board, lodging, clothing and her academic and religious education and she, in turn, served him as a teacher and helped take care of his niece’s children and also did office work which consisted of keeping records, in part. In about 1934 opponent’s mother, Mrs. Lise Thomas Plai-sance, was employed as his housekeeper which arrangement continued for approximately eleven years or until about 1945.
Rev. van Baast retired in May 1946, and in April, 1947, he returned to Holland where he lived with a niece, Josephine.
Opponent testified that before Rev. van Baast went to Holland in April of 1947 (the time is not definitely fixed by her testimony) he took her to the First National Bank in Donaldsonville, of which she testified: “I did go (to the Bank) with Father. Put my name on a card. Had a box put on my name.” She could not remember the person who was “at the window” when this was done, but the testimony of Irwin J. Moliere, Vice President of the First National Bank, is fully corroborative of the fact that she did have a box “until April of 1947”. It is also shown that opponent had a personal account which had been closed in 1940 “or before.” There is no testimony as to why opponent had a bank box or what she had deposited in it or why she gave it up in 1947 nor who deposited money in the personal account which she closed in 1940 or prior thereto, nor what card she put her name on, although it would seem it was in connection with the box as it was done at the same time that she obtained the box. However, the testimony of the Vice President of the bank does show that Rev. van Baast “authorized Lise and her mother to endorse and deposit them into his account.” He testified that the checks were sent to the mother first and “then to Lise,” which we understand to mean that during the lifetime of the mother the checks were sent to her for deposit and after her death to her daughter.
There is no testimony whatsoever in the record nor any showing that any instructions were given to the bank to open separate accounts, that is, one for the money which Rev. van Baast would send directly to the bank for deposit and one for the money he would send to opponent and/or her mother for deposit. Therefore, we find no testimony to sustain any contention or finding that the bank made an error in not opening and maintaining separate ac *514 counts. Neither did the opponent testify that Rev. van Baast had instructed her to maintain separate accounts, however, it can clearly be inferred from the testimony that he intended the checks which he mailed to her mother as long as she lived and thereafter to opponent, to be deposited in his account and to be entered in the deposit book which he left in the possession of opponent and her mother.
The Rev. van Baast, having been ordained in 1904 in Baltimore, Maryland, and having spent the following approximately 43 years as a missionary in the United States during which time he spent 23 years conducting parochial schools in Donaldson-ville and Berteauville, Louisiana, we cannot presume that he was lacking in an understanding of the English language. On the contrary, we must presume and we believe the opposite to be true, in our attempt to understand the intent of the testator as to the particular bequest under consideration, as well as all other bequests contained in the will and to interpret the language “ * * * in the sense in which it can have effect, rather than that in which it can have none.” LSA-C.C. Article 1713.
There is no doubt but that Rev. van Baast had an affection for opponent and her mother, who had served him for eleven years, and desired to leave them something, but it is apparently equally true that although his life’s work had been in the United States for a span of almost fifty years that a deep affection and lasting ties had remained with him during his life’s work here for those close relatives — brothers and sisters and their children — who still lived in his native land of Holland, for it was there upon his retirement that he went to spend his remaining years, and we believe that when he used the language in his will: “All my remaining monies in the First National Bank of Donaldsonville, Ld. USA (together with other property listed) * * * I will and bequeath to my four brothers, Kees, Hendrick, Marinus and Jan —Hendricks is dead, his share shall be equally divided among his four children, Mina, Piet, Willem and Jan,” that he fully intended this bequest as well as all others to be honored even though on that date the deposit book showed only the sum of $247.00 in his account. It is true that as of the date on which the will was executed it is shown by this record that he had only deposited in the First National Bank of Donaldsonville, Louisiana, the sum of $247.-00. This is one of the mystifying facts surrounding the will, that on its date of execution there would have been practically no money in the only account, apparently, which he had in the bank of Donaldsonville on that date to pay the bequests which to-talled many times such amount. For example, the first bequest is to the five children of “Mr. John H. Heuvel and his wife” of all his shares of stock in the First National Bank of Donaldsonville, Louisiana “and also one thousand dollars of the money now deposited to my account in the above said First Nat. Bank in Donaldson-ville La U.S.A.” As stated, we are at a loss to understand why, on the date of the execution of this will, the testator made bequests far in excess of the amounts which this record reveals he had deposited in the Donaldsonville bank. However, we must take the facts as we find them and on the date of his death we do' believe that he knew or believed that he had sufficient monies as designated in his will to provide for the bequests made therein with a surplus after payment of such bequests to satisfy his last bequest of “all my remaining monies * * * ”. (Emphasis added.)
The bequest “To Mrs. Lise Thomas-Plai-sance my old housekeeper (if she outlives me) or else to her daughter Miss Lise Plai-sance, I give and bequeath:
“All the money she has deposited in the First National Bank of Donaldson-ville La. U.S.A. * * * ”,
we interpret as an intention to bequeath to the mother, Mrs. Lise Thomas Plaisance, primarily, all the money which Mrs. Lise Thomas Plaisance “had deposited” in the bank, or, if Mrs. Lise Thomas Plaisance, *515 his old housekeeper, died before the testator, then and only in that event, the bequest was to go to opponent. The bequest does not say nor do we so interpret it to mean that in the event of the death of Mrs. Lise Thomas Plaisance the opponent was to get all the money both had deposited. If the testator had intended this he could have readily said it by using the words “All the money they will have deposited in the First National Bank of Donaldsonville, La.” It is to be remembered in connection with the interpretation of this bequest that the testimony shows that Rev. van Baast sent the checks and money to be deposited in his account from the beginning to Mrs. Lise Thomas Plaisance and after her death to the daughter, opponent herein. Mrs. Lise Thomas Plaisance was the primary legatee under the wording of this bequest.
The executor, however, contends that even if the first provision of the bequest under consideration is so interpreted, it still is meaningless when we consider the remaining verbage, “in a separate account, which I have given her authority to handle.” It is true that there was no separate account as one is ordinarily understood, nor any showing of any authority given to Mrs. Lise Thomas Plaisance to handle the one and only account testator had in the bank in the sense of using the account or withdrawing any funds from the account. Although we do not understand why the testator would bequeath money which he stated is “now on deposit” unless he had another account, the fact remains that evidently he did not have any other account in this bank. We do believe that when he used the words “in a separate account, which I have given her authority to handle” he was referring to the fact that he had authorized Mrs. Lise Thomas Plai-sance to deposit money which he sent her in this account, either individually or through her daughter, Lise Plaisance, and to have the bank enter these deposits in the deposit book which he had obtained and given to Mrs. Plaisance and her daughter shortly before his departure for Holland.
It is next necessary for this court to decide the effect to be given to the words used in the bequest, “all the money she has deposited * * * ”. Did the testator intend to limit the bequest to the money deposited by Mrs. Lise Thomas Plaisance as of the date of the execution of the will on August 8, 1947, or to the date of the death of the legatee, Mrs. Lise Thomas Plaisance on February 12, 1951, or, as contended by opponent, to the date of the death of the testator on October 7th, 1956?
We cannot agree with the latter contention of opponent as we have expressed our opinion that the bequest by its terms is limited to the money deposited by Lise Thomas Plaisance, individually or on her behalf by opponent and, of course, the maximum time would be the death of Lise Thomas Plaisance on February 12, 1951.
There is another fact which practically precludes an intention on the part of the testator to bequeath all the money which Lise Thomas Plaisance and opponent deposited on behalf of the testator to the date of his death on October 7, 1956. While the amount or sum of money so deposited by Lise Thomas Plaisance and/or opponent is not shown by the record, counsel for opponent in his brief states that the testator sent directly to the bank the sum of $5,106.-50 and he also sent to the opponent the sum of $9,052.30, making a total deposited by both of $14,158.80 of which amount there remained on the date of the death of the testator the sum of $12,297.04. Assuming that these figures are correct and deducting the amount deposited by Lise Thomas Plaisance and opponent of $9052.30 from the total amount on deposit as of the death of the testator, it would leave only $3,245.34, whereas the cost of the succession alone as shown on the provisional account amounted to $3,196.29, which would leave $49.05 to be applied on $3000.00 worth of cash bequests. In arriving at the intention of the testator as to the special bequest to Lise Thomas Plaisance or, in the event of her death, to opponent, it matters not that the latter has agreed to payment of all expenses and *516 special bequests other than all remaining monies to the three brothers and the children of a fourth brother of the testator. Unless there was supposed to have been another account which never came into existence, we do not believe that Rev. van Baast, who was highly educated and experienced and of necessity probably meticulous in the handling of his finances, ever intended such an interpretation or result.
LSA-Civil Code Article 1720 is as follows :
“A disposition, couched in terms present and past, does not extend to that which comes afterwards.
“For example, a legacy of all the books a testator possesses dees not include those which he has purchased after the date of the testament.”
See Succession of Gurganus, 206 La. 1012, 20 So.2d 296 and authorities cited in LSA-Civil Code under Article 1720.
The bequest of all money “she has deposited” is expressed in the past tense, which under the codal article and jurisprudence clearly showed that testator intended to bequeath only the money Lise Thomas Plaisance had deposited in the First National Bank of Donaldsonville, Louisiana as of the date of the will, or August 8, 1947. Even if the testator intended the bequest to be interpreted as “all the money she now has deposited, etc.” the bequest would be governed as of the date of the execution of the will by the testator. There is nothing ambiguous in that phraseology but only in the following language “in a separate account, which I have given her authority to handle,” which is descriptive only of the account in which the money had been deposited, and we have accepted opponent’s contention that this ambiguous wording referred to authority which the testator had given to the legatee to make deposits in his account and to keep a separate deposit account book of such transactions. The identification of the account in which the money has been deposited in no wise affects or limits the language specifying the amount of the bequest, which is accurately stated to be “All the money she has deposited in the First National Bank of Donaldsonville, Ld. * * * ”, and if we interpret it as being in the past tense it is limited to the amount so deposited as of August 8, 1947, the date of the execution of the will, or, if interpreted as meaning the money “she now has on deposit” could only be interpreted as of the present, meaning as of the date of the execution of the will by the testator, viz, August 8, 1947.
The District Judge held as contended by counsel for opponent that in view of the fact that opponent and her mother had served testator so well and faithfully for so many years that he intended to bequeath all of the funds which he had sent directly to Lise Thomas Plaisance and opponent for deposit in the bank, which was estimated at approximately $9,052.30, and although there is no testimony as to the quality of the services rendered during the eleven years Lise Thomas Plaisance was employed as housekeeper for the testator, we have no reason to doubt that she was faithful and that the testator was appreciative and that he paid her a commensurate wage for such services.
As to the opponent, the testator had taken her into his home at the age of eight and had clothed, fed, educated her scholastically and religiously, and, in the literal sense, “raised her”, and the record shows that she had been paid a small amount monthly for teaching.
It was only natural that the testator should remember an old servant in his will. Lise Thomas Plaisance was the primary legatee, and no bequest was made to the opponent other than on the condition that Lise Thomas Plaisance die before the testator.
To interpret the will as contended by opponent and as in the judgment of the Lower Court would be violative of Article 1720 of the LSA-Civil Code as there is no ambi *517 guity in the fact that the testator used the past or present tense, which would limit the amount of money bequeathed to the sum that Lise Thomas Plaisance or her daughter in her behalf had deposited as of the date of the will, August 8th, 1947. Such an interpretation would also violate the provisions of Article 1713 of the LSA-Civil Code, for an interpretation that the testator bequeathed to Lise Thomas Plaisance (“if she outlives me”), or else to the opponent, all the money deposited by either to the date of testator’s death, which counsel for opponent as well as the lower court have computed at more than $9,000.00 of the $12,297.04 total from which the expenses and other bequests must be made, would clearly defeat the intention of the testator insofar as other positive bequests contained in the will. All of the provisions of the will could not be carried out under such an interpretation, while the will can be completely executed in all respects under the interpretation we have given to the bequest to the opponent.
The Lower Court in its judgment has reduced by half the amount of $856.14 placed on the provision account as:
“Expenses of last illness:
Hospital, Physician, funeral and burial expenses paid by Herman Gerard Frank, Vught, Holland (3.276.46 guilders.)”
The reason given by the Lower Court for allowing only one half of these expenses “is the fact that the testator died in Holland, where he left an estate the extent of which is unknown to this court. However, the court feels that regardless of the size of the estate in Holland, it should certainly bear at least one-half of the expenses of last illness.” As will be seen by reference to the will, supra, the testator provided: “All funeral expenses in Church on graveyard and Masses, all other accessories toward the funeral to '.c paid by my bank account in the First Nat. Bank of Donald-sonville Id. U.S.A.” In addition to this provision in the will which would specifically cover all funeral and burial expenses, we find no evidence of his having left an estate in Holland. No law has been cited to support the position or conclusion of the Lower Court and no such contention has been made in this court by counsel for opponent. However, the judgment of the District Court does not contain a provision reducing this amount. In order that there be no question of the position of this Court, if the judgment could possibly be construed as reducing this item on the provisional account by one-half, it is hereby reversed.
In view of the fact that the total sum on deposit as shown by the deposit book in evidence as of the date of the execution of the will by the testator on August 8, 1947 was $247.00, the bequest to the opponent should have been placed on the provisional account in this amount. It is therefore ordered that the judgment of the District Court be amended by reducing the bequest to Lise Plaisance from the sum of $6,553.72 to $247.00 and it is therefore ordered, adjudged and decreed that the provisional account filed by the dative testamentary executor be amended by recognizing and placing on said account the opponent, Lise Plaisance, a particular legatee under the last will and testament of Rev. Jos. P. van Baast, for the sum of $247.00.
It is further ordered, adjudged and decreed that the provisional account be amended accordingly insofar as the bequests of the remainder of the money to Cornelis, Mari-nus and Johannes van Baast and the four children of Hendrick van Baast is concerned by reducing same to $1438.41 to Cornelis van Baast, Vught, Holland (brother of deceased) ; $1438.41 to Marinus van Baast, Vught, Holland (brother of deceased) ; $1438.41 to Johannes van Baast, Vught, Holland, (brother of deceased) and by reducing to the sum of $359.60 the bequest to each of the four children of Hen-drick van Baast, deceased brother of Rev. Jos. P. van Baast, viz: Whilelmina Jo-sephina van Baast Schuurmans, Vught, Holland; Johannes Josephus van Baast, Vught, Holland; Josephina Petrus van *518 Baast, Vught, Holland; and Wilhelmus Josephus van Baast, Vught, Holland.
For the above and foregoing reasons the judgment as amended is affirmed.
Amended and affirmed.

. It was shown on the trial of the opposition that Lise Thomas-Plaisance died on Feb. 12, 1951.