## SUCCESSION OF WHITING VALENTINE—On rule taken by the Widow and Heirs of W. G. VINCENT.

The deceased by his will, which was executed in 1848, after a legacy to his wife of certain specified property, declared as follows :

" All the balance of my property, I will to my six brothers and two sisters, to be equally divided between them, after all claims against me are paid. And, I hereby appoint, *John Valentine*, my brother, to execute this will; and, in case of his death or absence, *Palitzen Belcher*, my wife's brother. I would recommend that this property be sold, for one-fourth cash, and the balance on six, twelve, eighteen and twenty-four months' time ; and the notes secured by mortgage to secure payment."

" I would recommend that the money be paid to them, so as to be of the greatest advantage to them possible. There will be somewhere from two to three thousand dollars for each of them, if it were so divided at the present time. What my property is, and where situated, you will find by the copy of the titles in my bank-box. Although I have made several errors, yet I think the above will be easily understood I have one house on Circus Street; two on Gravier; two on Adele; one corner of Camp and St. Mary; and one vacant lot, corner of Plaquemines and Seventh streets."

*Held :* that this was a disposition of the property which the testator then had, and was not intended to cover his future acquisitions ; and that, consequently, property purchased by the testator in 1853, after the will was made, did not pass under it.

" A disposition, the terms of which express no time, neither past nor future, refers to the time of making the will." C. C. 1715.

APPEAL from the Second District Court of New Orleans, *Morgan* J. *Clarke & Bayne*, for plaintiffs and appellants. *P. E. Bonford*, for defendant.

MERRICK, C. J. The defendant in the rule in this case is the purchaser of property at a sale made in order to effect a partition among the universal legatees under the will of the deceased. He refuses to comply with the terms of the sale, because, as he alleges, all the parties interested in the property were not made parties to the proceedings in partition.

The question which he presents arise under the will. If the will conveyed conjointly to the legatees the present and future property of the testator, the purchaser has acquired a good title and must be compelled to comply with the

terms of the sale. If, on the other hand, the legacy was not conjoint, or if it was only of the present property of the testator, in either case the purchaser has not acquired a good title, and ought to be discharged from the rule taken against him.

The will which was dated in 1848 is as follows:

"NEW ORLEANS, *December 12th*, 1848.

As my health is not good, and as I travel often, I think it my duty to write a will, in order that there may be · as little trouble about my estate as possible.

I, therefore, give to my wife, *Lucy Belcher*, the two pieces of property, which are now in her name—one on St. Charles street, the other on Phillippa street —and, likewise, all the property where we now live, on Camp street, consisting of a frame house and three lots of ground, and all the furniture belonging thereto; and, likewise, the first month's rent that may fall due, after my death. This property, in all, is worth, I think, ten thousand dollars; and is just about half of what we have gained since we were married.

All the balance of my property, I will to my six brothers and two sisters, to be equally divided between them, after all claims against me are paid. And I hereby appoint *John Valentine*, my brother, to execute this will; and, in case of his death or absence, *Palitzen Belcher*, my wife's brother. I would recommend that this property be sold, for one-fourth cash, and the balance on six, twelve, eighteen and twenty-four months' time; and the notes secured by mortgage to secure payment.

I would recommend that the money be paid to them, so as to be of the greatest advantage to them possible. There will be somewhere from two to three thousand dollars for each of them, if it were so divided at the present time. What my property is, and where situated, you will find by the copy of the titles in my bank-box. Although I have made several errors, yet I think the above will be easily understood. I have one house on Circus street; two on Gravier; two on Adele; one, corner of Camp and St. Mary; and one vacant lot, corner of Plaquemines and Seventh streets.

I have done this in my right mind, on the date above.

[Signed] WHITNEY VALENTINE."

The property which was sold was acquired by the testator after the making of his will, viz: in February, 1853, it being one half of the lot sold, the other half being held by *John Valentine* and sold at the same time.

*Richard Valentine*, one of the six brothers of the testator and one of the legatees in the will, died after the execution of the will, but before the testator, leaving three minor children, who were not represented in the partition. Thus, two questions arise under the will and these facts: Did the will convey the future property? Was the disposition conjoint, and did the other brothers and sisters take the share of *Richard Valentine*, by accretion? If either of these questions, as already said, are decided in the negative, the rule must be discharged.

Under the peculiar phraseology of this will, we think it was a disposition of the property which he then had. It was not intended to cover his future acquisitions, and is, therefore, controlled by Article 1715 of the Code, which is in these words:

" A disposition, the terms of which express no time, neither past nor future, refers to the time of making the will."

SUCCESSION OF
VALENTINE.

"Thus, when the testator expresses simply that he bequeathes his plate to such a one, the plate he possessed at the date of the will is only included."

The minor heirs of *Richard Valentine*, therefore, appear *prima facie* to be interested in the property sold, and the purchaser cannot be compelled to complete the sale.

It is thus unnecessary to consider the second question with its surrounding difficulties.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court be avoided and reversed, and that the rule be discharged at the cost of the plaintiff in the rule, the appellee paying the costs of the appeal.