## No. 113.

### SUCCESSION OF JAMES MARKS.

A will speaks as of the death of the testator, and conveys all the property owned by him at that time, unless a contrary intention manifestly appears. This is true even though the property may have been wholly changed in the interval between the making of the will and the death.

The word " property " used in a will has as broad meaning as " estate " or " succession," and is identical with those words.

Succession of Valentine, 12 Ann. 286, and Lawson case, Ibid. 603, overruled.

APPEAL from the First District Court, Parish of Caddo. *Taylor,* J.

---

*Land & Land* for Plaintiffs and Appellees:

1. A disposition, couched in terms present or past, or a disposition, the terms of which express no time, refers to the time of making the will, and embraces only property owned at the date of the will. C. C. 1720-22.

2.  Where the disposition reads " all the balance. of my property I will to my six brothers and two sisters, to be equally divided between them," it was held that it was a disposition only of present property, and did not include future acquisitions.  Succession Valentine, .12 An. 286; Lawson's case, Ib. 606.

3.  The instant case is identical with that of Valentine, and the entire absence of any reference to the estate or succession of the testator differentiates it from cases in 8 La. 489 and 2 An. 580, and from the Burnside case.

4.  A bequest which does not embrace the whole or a fixed proportion. of the estate or succession of the deceased is a particular legacy.   C. C. 1606-12; 12 An. 606; 30 An. 271; Marcadé 4, No. 119; Toullier Vol. 3, No. 510.

5.  Sales and donations constitute tacit revocations of legacies for all that has been sold or given, though the things have returned into the possession of the testator.  C. C. 1695. The legacy of a note is revoked so far as it has been collected by the testator.  The legacy was not perfect until the testator died and then it took place as to what was then due. 4 N. S. 428.

The legacy of money in a particular drawer is satisfied by payment of money found there, though of less amount.  5 N. S. 102.

*R. J. Looney, T. F. Sorrels* and *M. L. Jones* for Defendants and Appellants.

---

The opinion of the Court was delivered by

MANNING, J.  James Marks made his olographic will in May, 1879, and died in June, 1882, at the age of seventy-seven years.  He was never married.  His nearest surviving relatives are the children of pre-deceased brothers and sisters.  After directing the payment of his debts there follows several legacies in separate clauses, and then these two items upon which hinges the construction of the will :

Item 6.  I give the balance of my property of every kind and description to (here follow the names of some of his nephews and nieces) to be equally divided between them, but such as have received advances are to be charged with that much as part of their shares.

Item 7.  I release my executors from the trouble and expense of taking an inventory and appraisement of my property and here give a statement of all the property that I have.  (Here follows a long list of notes, accounts, land warrants, and two large tracts of land, statement of moneys in bank, and judgments.)

Between the date of the will and his death, the.testator had disposed of all his land and nearly all the money, rights, and credits enumerated, and had acquired other lands, and had invested his money in other notes and securities, so that at his death he had but little of· the property he owned when he made his will.  He seems to have been a busy bustling man and changed his investments with rapidity.

The contention is that the will disposes only of the property owned by the testator at the time of making it, and consequently as to the

property acquired thereafter the testator died intestate. The lower Judge so ruled. We have lately examined this and cognate questions in the Succession of Burnside, going over the whole ground, and considered the subject in the light both of principle and authority, and have held that the will in that case spoke as of the date of death. We see no reason to doubt the correctness of that ruling and shall apply it here.

The inveterate propensity of the common lawyers to invent terms and apply unbending formulas in their treatment of the multifarious concerns of life, produced a habit of mind from which that branch of the profession has only begun to extricate itself in recent years. They gave especial significance to words such as "estate," "effects," etc., and would not permit them, in the mouths of laymen, to mean anything else. They recognized that the true and indeed the only rule for the construction of wills was to ascertain the intention of the testator—for what is a man's will but his intention?—but in the same instant they required that that intention should be expressed in their way. This produced a succession of decisions in which the manifest intention of testators was violated because they had not used the language the lawyers had invented, or had used it in a sense different from theirs. Of what possible consequence can it be that the words "estate" or "succession" are not used by Marks in his will? Why should it be of any more consequence that in nominating executors he has omitted the words "without seizin," except that a senseless requirement still remains in the Code? Does not every one know, when a business man, a plain layman outside the legal profession, who knows nothing of technical terms or their occult meaning, writes his will and gives the whole or the residue of his property to designated persons, that he means what the lawyers mean when they say "estate" or "succession?" And when he selects tried and trusted friends to execute his intentions, what absurdity to make the extent or duration of their power depend upon the employment or omission of words which to him are meaningless.

The case is identical with Burnside's and the language almost the same, and it would be impossible to select two better illustrations of perversity of construction than would be furnished if we should give to the word "property" a restricted meaning. These two eminently practical business men employ the same word to designate their possessions—the word which is in common use for that purpose—when writing that document which all admit must be construed, not by technical professional rules, but by intelligent effort to ascertain what the

writer meant. And yet in both cases it is argued that the employment of that word instead of "estate" has significance.

Burnside's language is, after reciting special legacies,—the residue of my property of every description, say stock in trade, notes $*$ $*$ $*$ etc., I bequeath to, etc.

Marks writes, I give the balance of my property of every kind and description to, etc.

The parallel of the two cases does not end there. Marks gives in the seventh item a complete list of his property. It is urged upon us that this was done to inform the legatees of the objects of his bequest. He states his object to be the avoidance of the trouble and expense of an official inventory.

The learned Judge below, who annually gives us proof of his thorough researches and admirably poised judgment, decided for the contestants on the authority of Valentine's Succession, 12 Ann. 286, which along with Lawson's case, Ibid. 603, we overruled in the Burnside decision. We then passed in review the whole jurisprudence of this Court upon this subject and applied and reaffirmed the doctrine of the earlier cases. Shane vs. Withers, 8 La. 489; Compton vs. Prescott, 12 Rob. 56; Succession of Fisk, 3 Ann. 705; McDonough's case, 8 Ann. 252. It is unnecessary to repeat here what we there said.

The brief of contestants informs us that there is no controversy over the first five items of the will. As to the sixth we hold that the disposition therein contained embraces the "balance of the property of every kind and description" which the testator owned at the time of his death.

It is therefore ordered and decreed that so much of the judgment of the lower court as restricts the testamentary disposition of James Marks to the property owned by him at the time of making his will and declares his intestacy as to all subsequently acquired, is avoided and reversed, and it is now adjudged and decreed that the legatees named in the sixth item of the will are entitled to the residue of the property of the testator, after the special legacies are deducted, to the exclusion of all others, and that the will be thus executed, the contestants paying the costs of both Courts.