LAND, J.
Josephine Thomas married Alexander C. I-Iutchinson in the year 1866. Their matrimonial domicile was in the city of New Orleans.
On May 23, 1880, Mrs. Hutchinson made her last will and testament, as follows, to wit:
“New Orleans, May 23rd, 1880.
“Be it known, that this is my last will and testament.
“I leave and bequeath unto Alexander C. Hutchinson, all the property I possess, real and personal, movable and immovable.
“I hereby appoint my said husband sole Executor with seizin, and in case of his death or inability to serve, I appoint John B. Richardson, my sole Executor with seizin.
“Josephine T. Hutchinson.”
At that date the community property amounted to about $300,000, and Mrs. Hutchinson had a small separate estate.
She died on January 14, 1895, and at that date the community property amounted to about $960,000.
A few days after her death the surviving husband caused her last will and testament to be probated, and obtained an order of court sending him into possession of all the property of the decedent, both as usufructuary and as universal legatee. All of these proceedings were ex parte.
Hutchinson died on December 7, 1902, leaving a last will and testament. The defendants are his executors and legatees.
Mrs. Hutchinson left no forced heirs. The plaintiffs and intervener are admitted to be her collateral heirs.
In their petition plaintiffs denied that the will of May 23, 1880, “was wholly written, dated, and signed by Josephine T. Hutchinson.” They assailed the probate proceedings as absolutely null and void for want of notice to them—the presumptive heirs.
Plaintiff further charged that said will, if valid, was revoked and annulled by a subsequent testament made by the testatrix, which was “concealed, made way with, suppressed, and destroyed” by Alexander O. Hutchinson.
Plaintiffs finally alleged that, even if said revocation was not effective, the purported will of May 23, 1880, “by its terms, only refers to the property, real and personal, movable and immovable, possessed by said Josephine Thomas Hutchinson at the time of the alleged making and execution of said instrument.”
Plaintiffs prayed for trial by jury.
The answer of defendants was a general and special denial of all the allegations of the petition, except the undisputed facts of marriage, community, death, and their tenure under the last will and testament of Alexander O. Hutchinson.
Defendants, answering further, averred the validity of the will of May 23, 1880; that it was duly probated and ordered executed, and the universal legatee sent into possession of the estate by a judgment of the court.
The answer further averred undisputed and undisturbed possession of Hutchinson, *681 as universal legatee, under said will, from January, 1895, until liis death, in December, 1903, to the full knowledge and acquiescence of plaintiffs and intervener, and, in bar of their demands to annul and set aside the will and the probate thereof, pleaded the prescription of five years.' The ease was tried before a jury, and the result was a verdict in favor of the defendants.
From the judgment on said verdict, plaintiffs and intervener have appealed.
In the original brief filed by counsel for appellants, their contentions are reduced to two propositions, as follows, to wit:
“First. That the will does not contain a universal legacy, and only disposes of the property which she possessed at the time she made it.
“Secondly. That A. C. Hutchinson, the legatee, has lost all rights to the property of the testatrix by having ‘embezzled’ and concealed it.”
The main issue, therefore, is whether the will imports a particular legacy of the property owned by the testatrix on May 23, 1880, or a universal legacy of all the estate of the wife as it existed at the date of her death.
This crucial question has been argued by the distinguished counsel on both sides with great learning and ability.
Defendant’s counsel strenuously contend that the question has been settled by our own state jurisprudence, and cite a number of decisions, which we shall proceed to review.
In Shane v. Withers, 8 La. 489, decided in 1835, the testator said: “I do bequeath to my wife, Margaret Delia Withers, one third part of my whole estate: I also bequeath to my sister, Sarah Ann Withers, one third part, I also bequeath to my sister Margaret Withers, one third part of my whole estate.”
The main contention of the legal heirs in that case was that the dispositions contained in the testator’s will express no time, neither past nor future, and should have been construed as referring to the time of making said will according “to the Louisiana Code (article 1715).” On this point the court ruled that universal legatees hold the place of heirs instituted by testament, and further said: “Viewed in this manner, the rules for the interpretation of legacies are wholly inapplicable to the present case. Indeed, from the example given to illustrate them, it would appear that they must find their application exclusively to special legacies or dispositions made by a testator of some determined portion of his estate, designated in genus or species.”
As to the terms of the will, the court said: . “The testator explicitly disposes of the whole of his estate to three persons, who are appointed to take by equal portions. The whole passed into the hand of his executors by the terms of the will. In administering, they were clearly bound to collect all his property, and, after the payment of debts, to distribute the remainder according to the provisions of the testament.
“It might, perhaps, be correctly assumed that in all dispositions causa mortis, the words ‘estate’ and ‘succession’ are synonymous.
“However this may be, generally speaking, it cannot be doubted, according to the seisin granted to the executors in the present instance, that the word ‘estate’ was used as an expression of the same sense and meaning which would follow from the term ‘succession.’ ”
This decision was affirmed in Succession of Burnside, 35 La. Ann. 708, overruling the Cases of Valentine and Lawson, 12 La. Ann. 286, 603.
In the Burnside Case, the testator, in the opening sentence of his testament, expressed the intention to dispose of all his worldly estate.
The testator, after making a number of particular legacies and appointing an executor, bequeathed the residue of his property of every description—say, stock in trade, notes, accounts, interest in partnership, etc. —to Oliver Beirne, subject to the payment of all his just and lawful debts, and the expenses incidental to his succession.
The court ruled that the disposition in favor of Beirne was a universal legacy, and carried the totality of the property owned by the testator at the time of his death.
In Succession of Marks, 35 La. Ann. 1054, the testator, after directing the payment of his debts, and making several legacies, gave the balance of his property, of every kind and description, to certain relatives.
Immediately following this bequest of the *683 residuum, the will recites, “I release my executors from the trouble and expense of taking an inventory and appraisement of my property and here give a statement of all the property I have.” (Here follows a long list of notes, accounts, land warrants, two large tracts of land, statement of money in bank, and judgments.)
The will contained no reference to the estate or succession of the testator.
The court said: “As to the sixth, we hold that ■ the disposition therein contained embraces the ‘balance of the property of every kind and description’ which the testator owned at the time of his death.”
The syllabus states the ruling of the court as to the meaning of the word “property” as follows, viz.: “The word ‘property,’ used in a will, has as broad a meaning as ‘estate’ or ‘succession,’ and is identical with those words.”
In Succession of Blakemore, 43 La. Ann. 845, 9 South. 496, at the date of the will the testator owned property in Tennessee and Louisiana, and nowhere else.
The following is an extract from the opinion, to wit: “His intention was to dispose mortis causa of all his property, which consisted of that in Tennessee and that in Louisiana.
“That in the first state he disposed of in the following words: * « * ‘My real estate in Tenn. I want it divided between J. Haywood and H. 0. Blakemore’s airs.’ .
“That in the second named state [Louisiana], which constituted the residue of his estate, he disposed of in the following terms: T this day give D. A. Reas one half of real estate and one half of the perishable property and Robert Reas the other half in La. They air to take car—J. W. Reas the best they know how until he is of age, and he is not considered to have a good mind. I don’t think it proper for me to give [him] any property.’ ”
The court held that this testament, apparently devising property in esse at the time, and designated by location, but which, the evidence showed, constituted the testator’s whole estate, contained a universal legacy: affirming 35 La. Ann. 708, and 35 La. Ann. 1054.
In the case at bar, Mrs. Hutchinson’s testament reads: “All the property I possess, real and personal, movable and immovable.”
In the Burnside Case the disposition was of the “residue of my property”; and in the Marks’ Case of “the balance of my property of every kind and description”; and in the Blakemore Case of “one half of real estate and one half of the perishable property * * * in La.”
In all of these cases the court held that articles 1720, 1721, and 1722 of the Civil Code contain rules of interpretation to be applied merely to determine the extent of a particular legacy, and that the disposition which purports to dispose of all or the residue or balance of the testator’s property, though not couched in future terms, must be held to speak as of the date of the testator’s death, unless there be something else in the will which manifestly precludes such an inference. See, also, Succession of Allen, 48 La. Ann. 1047, 20 South. 193, 55 Am. St. Rep. 295.
The object and purpose of a testament is to dispose of the property, in whole or in part, which the testator may leave at the date of his death. Hence the dispositions must be construed as of the date of death unless the contrary intention be expressed by the testator. Applying this simple, commonsense rule to the will of Mrs. Hutchinson, it appears that it was her manifest intention to leave and bequeath to her husband all the property she possessed at the date of her death.
Moreover, the presumption is against partial intestacy.
A legacy of “tous mes biens” is universal. “Lorsque je declare vous léguer tous les biens qui m’appartiennent au moment oü je teste,” the legacy is particular. Mourlon, 11 p. 358.
There is no substantial difference between the meaning of the words “possess” and “own.” They are equivalents in common speech, and according to all the lexicographers. In law, civil possession is as extensive as ownership, and there may be cases where actual possession is broader than the title.
“My property,” and the “property I possess,” mean one and the same thing.
Our conclusion is that, by the dispositions of the will, Alexander O. Hutchinson was instituted universal legatee.
Having reached the conclusion that by the *685 terms of the will, which are not ambiguous, the entire estate or succession passed to the universal legatee, it is unnecessary to consider the extrinsic circumstances, such as the existence of a mother and collateral relations at the date of the will, and the affectionate relations which existed between them and the testatrix. Whatever may have been the extent of the testatrix’s affection for her relations, and solicitude for their welfare, the fact remains that she disinherited them, and left her whole estate to her “beloved husband.”
As to the mother, she had remarried and was in independent circumstances. Moreover, the mother’s share in the estate of her daughter was increased, by the mere fact of the execution of the testament, from one-fourth to one-third, according to the present jurisprudence of this state.
It is charged in the petition that the decrees probating the will of the wife and sending the husband into possession were absolute nullities, because rendered ex parte and without notice to the heirs.
Our jurisprudence is that such decrees are prima facie valid. Derbigny v. Peirce, 18 La. 552; Calais v. Semere, 10 La. Ann. 684; Breaux v. Sarvoie, 39 La. Ann. 246, 1 South. 614; Succession of Justus, 45 La. Ann. 192, 12 South. 130.
The charge that Alexander C. Hutchinson “embezzled” and concealed the property of the succession is not alleged in the pleadings.
This charge is a side issue which has been injected into the case, and is not sustained by the evidence. Hutchinson was sent into possession by the decree of the probate court, which recognized him as usufructuary and universal legatee. The omission to inventory the property did not affect" his legal rights. Faurie v. Faurie, 11 La. Ann. 297; Gryder’s Heirs v. Gryder, 37 La. Ann. 638.
Conceding that his affidavit that all the property of his wife’s Estate belonged to the community was not true, this incorrect or false statement, if not a conclusion of law, was not a concealment of the separate property of the wife, which consisted of real estate, as shown by recorded title, and a certain sum of money inherited by the wife from her mother’s estate, as shown by notarial act of partition to which plaintiffs were parties. The same allegation made by A. C. Hutchinson was made in plaintiffs’ original petition, in which it is alleged that the wife’s estate consisted of her share in the community worth $1,000,000.
Another contention is that A. C. Hutchinson was estopped by his pleadings in the probate proceedings in his wife’s succession from claiming as universal legatee, because at the same time and in the same petition he also claimed as usufructuary.
In Wood’s Heirs v. Nicholls, 33 La. Ann. 748, this court held that estoppel should be specially pleaded, and is not admissible under the general issue. Plaintiffs have not pleaded the estoppel urged in argument and brief.
It is difficult to conceive how Hutchinson was estopped from claiming a title by certain pleadings in which that very title was asserted.
It might be argued with equal force that he was estopped from claiming as usufructuary because in the same petition he claimed as universal legatee.
The inconsistent demands prejudiced no one, and the decree recognizing both was harmless error.
We concur in the verdict of the jury, and the judgment rendered thereon.
Judgment affirmed.
MONROE, J., recused.