188 So. 15

**FINCK et al. v. DELMORE.**

No. 35055.

March 6, 1939.

Rehearing Denied April 3, 1939.

Joseph G. Dempsey, Jr., and James J. Landry, both of New Orleans, for appellants.

H. W. Robinson, of New Orleans, for appellee.

ODOM, Justice.

Margaret R. Davey, who was never married, died in New Orleans on July 2, 1928, leaving a last will in olographic form, dated September 9, 1925. She bequeathed her jewelry to certain of her friends and "the usufruct of the balance of my entire estate to my mother Mary Delmore Davey during her life". She appointed the Hibernia Bank & Trust Company "as Trustee to administer said legacy and my entire estate during the life of my mother with full power and authority to take, receive, hold and administer the same under and in accordance with the law of Louisiana, and to pay the income for the support and care of my said mother during her life". The will further recites:

"I give this usufruct to my mother in lieu of the legitime · of one third in full ownership to which my mother would be entitled as I estimate said revenue to be worth more than said one third in full ownership. Should it be held however that my mother is entitled to said one third, then I desire my mother nevertheless to receive the usufruct of the balance to be administered as above directed."

She appointed the Hibernia Bank & Trust Company executor of her estate and· stipulated that she desired "said Bank to be appointed curator of my said mother". Subject to said bequests and the usufruct in favor of her mother, she bequeathed $2000 to Milton Delmore, $5000 to Mildred Finck, $5000 to Mrs. L. Pelaez, $5000 to Charles Brosseau, $5000 to Mrs. Bessie Capers, $5000 to Theresa O'Brien, $3000 to Sister Edith McCullough, and $3000 to Edward Finck.

The residuum of her estate was bequeathed to the Little Sisters of the Poor and the Old Colored Folks' Home, share and share alike. The will provided that, in case her estate was insufficient to pay the above special legacies in full, they should be· paid "in proportion of the amounts bequeathed".

On the petition of the Hibernia Bank & Trust Company, the will was proved on July 6, 1928, and letters testamentary were issued to the bank. An inventory of the property, made on July 27 and filed on September 4, showed real estate appraised at $31,749.91, jewelry appraised at $738.25, and cash in bank $266.45—a total of $32,754.61.

Mrs. Mary Delmore Davey, the mother of Margaret R. Davey, who was given the usufruct of the testatrix's .estate, was adjudged insane and formally interdicted on July 24, 1925, only a short time before the will was made, so that, when Margaret R. Davey made her will, her mother was an interdict. When Mrs. Mary Delmore Davey was interdicted, her daughter, Margaret R. Davey, was appointed curatrix, and John A. O'Brien under-curator. The estate of the interdict, consisting exclusively of real property, was appraised at $40,-000. The interdiction proceeding and the appointment of Margaret R. Davey as curatrix took place about two months before Margaret R. Davey made her will.

From the date on which Margaret was appointed curatrix of her mother to the date of Margaret's death on July 2, 1928, Margaret administered the estate of her mother, the interdict. In December after Margaret's death in July, John A. O'Brien, the under-curator, petitioned the court for the appointment of another curator, and the Hibernia Bank & Trust Company was appointed, as desired by Margaret in her will. So that the bank was then executor of Margaret's will and curator of Margaret's mother, the interdict, and administered both estates until Margaret's mother died on April 9, 1931.

Margaret's estate owed debts amounting to approximately $17,500, and the court, on application of the bank as executor, ordered the real estate belonging to the succession sold in order to raise funds with which to pay them. Whereupon the bank, as curator for Margaret's mother, the interdict, presented a petition to the

court, setting out that, in as much as the real property belonging to the succession of Margaret was an undivided interest in certain lots and houses in New Orleans and that the other undivided interest therein was owned by the interdict; and that, in as much as the interdict was bequeathed the usufruct of Margaret's estate, it would be to the interest of the interdict for it, the curator, to purchase for the interdict the undivided interest therein which belonged to Margaret's estate, at the inventoried appraisement. This recommendation was approved by the court, and judgment was rendered ordering the purchase, and that was done.

The interdict then owned all of the real estate formerly owned by Margaret but was charged with the debts amounting to $17,500. The bank, as curator of the interdict, was authorized by the court to borrow this amount and to pay the debts, and to secure the amount borrowed by mortgage on the real property purchased for the interdict from Margaret's estate.

The net amount left in the hands of the curator, after paying the debts of Margaret's succession, was the difference between the inventoried value of that estate, which was $32,754.61, and the amount of the debts, which was $17,500, or $15,254.-61. In as much as Margaret bequeathed to her mother the usufruct of her property, the effect of the above transactions, all approved by the court, was to give the interdict the usufruct of $15,254.61, which was the residue of Margaret's estate after the debts were paid. After certain adjustments were made, as hereinafter stated, the

net amount was $18,131.29. The bank, as curator for the interdict, took possession of the property and administered it until the interdict died on April 9, 1931.

Shortly after the interdict's death, her brother, John C. Delmore, qualified as administrator of her succession, and the bank, former curator, turned over to him as administrator all the property owned by the interdict of which it had had the administration. The accounts show that, in addition to the real property owned by the interdict personally, it had on hand, according to its books, $18,131.39, which it had received from Margaret's estate, of which the interdict had only the usufruct. So that the administrator received, and was properly charged with, that amount, which did not belong to the interdict's estate but belonged to Margaret's estate.

The present suit was brought by the legatees under Margaret's will (except Milton Delmore, whose legacy was $2000) against the administrator of Mrs. Mary Delmore Davey's estate, to collect the special legacies. They prayed for judgment against the administrator for $31,000, the aggregate amount of their legacies.

The administrator filed several exceptions, the first being that the petition did not set forth a debt against the Succession of Mrs. William J. Davey (the former interdict, whose succession is now under administration) or against the administrator of that succession, but set forth an indebtedness against the Succession of Miss Margaret Davey (the testatrix); and second, that there is misjoinder of parties in that the testamentary executor of the

Succession of Margaret Davey was not cited. These exceptions were overruled, and the administrator filed answer.

In his answer, the administrator admitted generally the allegations of plaintiffs' petition except as to the liability of the succession for these special legacies. As to them, he denied liability. He set up the special defenses that the last will and testament of Margaret R. Davey was an absolute nullity for the reason that the testatrix was insane on the date the purported will was made, it being especially alleged that, at the time the said will was executed by the decedent, "the Testator was not qualified mentally to care for her estate or to execute a last will and testament; that she had been previously confined for a considerable period in the De-Paul Sanitarium, and at the time of the making of the will was employed as a volunteer attendant in said institution".

In answer defendant further alleged that, even if the said legacies claimed by plaintiff are legal charges against the Succession of Mrs. William J. Davey, "they can only be asserted by a legal representative of the Succession of Margaret R. Davey, to wit: a dative testamentary executor, or an administrator of her estate; that there are other debts of Margaret R. Davey besides plaintiffs, and the debtors and the other legatees have not been made parties to these proceedings".

It was further especially alleged "that a creditor of the Succession of Margaret Davey has no legal status to stand in judgment against the Succession of Mrs. William J. Davey".

There was judgment rejecting plaintiffs' demands and dismissing their suit. From this judgment plaintiffs appealed.

The trial judge assigned no written reasons for his judgment, and we have no information as to why he rejected the plaintiffs' demands.

The defendant has attacked Margaret Davey's will on the ground that she was insane at the time it was made. If the will is invalid, as defendant alleges, the plaintiffs, of course, have no case because they claim under the will. So the major question is whether Miss Davey was insane on September 9, 1925, when she made, or attempted to make, the will.

Insane persons are "those who do not enjoy the exercise and use of reason, after they have arrived at the age at which they ought, according to nature, to possess it". Civil Code, Art. 31. This defect disqualifies those who are subject to it from contracting any species of engagements and disqualifies them from making donations mortis causa. Article 1788 of the Revised Civil Code provides that "after the interdiction, no other evidence than the interdiction itself is necessary to prove the incapacity of the person."

But Margaret Davey was never interdicted or committed to any institution. Defendant alleged "that she had been previously confined for a considerable period in the DePaul Sanitarium, and at the time of the making of the will was employed as a volunteer attendant in said institution."

It is not alleged that she had been interdicted, nor is it alleged that she was

confined in that institution because of interdiction proceedings. The facts are that she was never confined in DePaul Sanitarium, although she stayed there for a considerable length of time. Her mother had been interdicted and was sent there by order of the court, but Margaret was not sent there.

The facts are stated by Sister Mary Agnes, who was superintendent in charge of that institution during the entire time Margaret was there. She was asked whether she had ever heard Margaret say anything about making a will. She said she had not but said that Margaret was "reticent in regard to her affairs." She further said:

"I realize that she was unhappy about John, who had charge of her business. She didn't think he was taking any interest in it, and she expressed a desire to have her affairs in the hands of someone who would be more interested. She thought that he was too much occupied in politics to pay attention to her affairs." (This indicates real sanity, not insanity.)

Sister Mary Agnes was asked, "Was she sane or insane?", and she replied:

"I am not a judge of that, and I don't remember whether the doctor had discharged her. She was there. I don't know whether she came of her own free will or because her mother was there; I don't remember those things, but I do know that Margaret was trusted. She was a trusty there; she was allowed the privilege of carrying keys; that she performed the office of an attendant; that she was permitted to take patients to the recreation grounds; that she also supervised some special work that was done by the patients."

She was asked whether that condition prevailed during the year 1925, and she said that it did. Sister Mary Agnes further said, "She did not live in the house; she lived in the cottage on the premises, which was not supervised." She further stated that Margaret was not in the custody of anyone while she was living in the cottage; that one of the graduate nurses lived in the same cottage with her but was not the custodian of Margaret. Sister Mary Agnes further said that Margaret was usually used "as an assistant". She said that Margaret worried sometimes about her bills not being paid up, "and felt that they should have been more promptly paid, but that the parties interested were taking care of it very neglectfully, and I think it irritated her".

On one occasion an imbecile girl, confined in DePaul's, was sent to Pineville, one of the State Hospitals for insane, and Margaret was sent along with her as custodian. On further examination Sister Mary Agnes said:

"I know she contemplated a visit of some months to a friend of hers from Florida, and no one had any objection to her going if she wanted to go. I think some uncle of hers came to see her while she was there, and I think he discussed the family affairs with her, but whether he influenced her or not I don't know anything of it."

Sister Mary Agnes further testified that, while she could not be certain, her im-

pression was that, at the time Margaret entered DePaul's, the doctors gave a certificate "that she had a nervous breakdown or was mentally confused, when she came in; I am not sure". She said that she came in contact with Margaret almost every day, and—

"Although she was not there as a patient when I left, she was in a separate building, as I tell you; she used to come over perhaps about nine o'clock or around that time, and she would, as I say, interest the patients and take them out in the yard, trying to divert them and amuse them, and then she did have sewing, and for some of the patients she picked up this occupation of [occupational] therapy for awhile; I remember on one occasion when they had twenty-five or thirty cases that she sort of supervised, and at other times smaller numbers."

She further testified that Margaret "was the only assistant that we had, except the paid hired help and some nurses". She testified that she trusted Margaret as she trusted no other patient in the institution.

Margaret Davey's will was prepared by Mr. Charles Rosen, a member of the New Orleans Bar, and signed in his presence. Mr. Rosen testified that, on numerous occasions prior to the date on which the will was prepared and signed, Margaret went to his office and consulted him about her mother's estate and affairs, and asked him especially whether her mother should be interdicted. He testified further that his records show that, in the month of August, which was just prior to the date on which Margaret made her will, at Margaret's request he prepared an application to the court to have her appointed curatrix of her mother, and that a family meeting, duly convened, recommended that Margaret be appointed, and this was done. He said that the family meeting was held before Scott E. Beer, a notary public.

Mr. Rosen was asked whether Miss Davey's conduct at the time she made the will, on September 9, 1925, or before that time, indicated that she was of insane mind. His reply was:

"Not at all. Miss Davey was as normal as anybody I ever knew. She came to my office on many, many occasions. She kept her check book there, as I remember it; conferred not only with me but with my secretary in the handling of the matter, and discussed the details of the administration on innumerable occasions. I want to say, in connection with the making of that will that I was asked about, that my recollection is that nobody accompanied Miss Davey when that will was made, that she was alone with me. That is my best recollection, and that she herself communicated to me all her wishes as set forth in the will. All I did was to throw it into legal shape, and, as Mr. Robinson said, prepare the form of the will."

It is suggested by counsel for the administrator in this case that, since Mr. Rosen is a layman, his opinion as to whether Miss Davey was sane or insane cannot be considered by this court. Technically, perhaps, his testimony should not be considered as opinion evidence. But his testimony as to what she did, as to what she thought, as to her conduct, as to what she

knew about her mother's business and affairs, as to what she knew of her own business and affairs, is highly relevant and most important touching the question as to whether she was mentally capable or incapable of making a will.

Mr. Rosen's testimony shows beyond question, we think, that Miss Davey knew what she had and knew what she wanted to do with it.

Furthermore, the testimony of Sister Mary Agnes, in our opinion, shows that Margaret was capable of making a will.

As against this testimony, we have that of Dr. H. R. Unsworth, a psychiatrist. He succeeded his father, who had been physician in charge at DePaul's. He was not connected with the institution when Margaret entered but knew her personally later on. The greater part of his knowledge of the case was gained from his father's records. He said she was afflicted with the mental disease known as "dementia praecox", which he defined as "primarily a disease of delusions or false beliefs, and associated with various types of hallucinations, misinterpretations of the senses, the sense of taste, sight, hearing and smell and so forth. It is definitely a deteriorating disease, and I personally—after all I am entitled to my opinion·as well as anyone else—I don't believe that a dementia praecox is ever normal, even what appears to be, as it is termed in the legal sense, a lucid period". He said that the so called lucid period, "to my mind, is merely a social adjustment, associated with a quiet delusional system, but yet one which is intrinsically still active. It is very hard to define and to express what I mean, but basically I mean that I don't think a dementia praecox is ever competent".

He further said that dementia praecox means "early mental deterioration", and that "Dementia Praecoxes are born and not made", and that there is no cure for the disease. He was asked whether Margaret Davey knew what she was doing during her lucid intervals, if she had any, or during a "social adjustment" period, and he said she did, and would "know she was making a will, yes, but she might not appreciate the details of such a document". He then stated, "After all, God Almighty is really the only one that knows."

After expressing the firm conviction that a dementia praecox is incapable of making a will, he gave the following testimony:

"Q. Doctor, isn't there a difference among medical men relative to the mental capacity of subjects of dementia praecox during lucid intervals? A. Yes, there is.

"Q. Is that difference a vast difference or a slight difference? A. Well, it is apparently a vast difference, because some men, I believe, will state that, during a lucid period, a person is competent."

We think it reasonable to conclude from this statement made by Dr. Unsworth that, if another psychiatrist, as eminent as he, had been called, the probabilities are that he would have expressed the opinion that a person afflicted as Dr. Unsworth says Margaret was could have made a valid will. Therefore his opinion is somewhat weakened by his admission that other men of his profession entertain a contrary view.

We respect the opinions of great experts like Dr. Unsworth and in some cases lean heavily upon them. But here Margaret Davey's conduct at the time, and before, she made the will speaks the facts as relate to her mental capacity. In Succession of Ford, 151 La. 571, 92 So. 61, we said that opinion evidence, however weighty and plausible, must yield when opposed to facts.

Margaret told Mr. Rosen what she had and what she wanted done with it. It is not suggested that she overlooked anything. For some time prior to the date on which she made the will she had been concerned and solicitous about her mother, who was mentally infirm. When application was made for the appointment of a curatrix, the family meeting recommended that Margaret be appointed, the court approved the recommendation, and the appointment was made. Surely neither the members of the family meeting nor the judge thought that she was insane, and that was in August before the will was made in September.

Sister Mary Agnes says that, when Margaret spoke of making a long visit to a friend in Florida, no one objected. If Margaret's condition had indicated to Sister Mary Agnes that she did not enjoy the exercise and use of reason (Civil Code, Art. 31), surely she would not have entrusted her with keys, used her as an assistant, permitted her to supervise meals, or entrusted her with the care and custody of an imbecile child to be conveyed to Pineville.

If it be true, as Dr. Unsworth says (and we yield to his opinion on this point), that Margaret Davey should have been, from a medical standpoint, properly classed as an insane person, we must hold, under the facts presented, that she had what are referred to in Article 1788 of the Civil Code as "lucid intervals", and many of them; in fact, that during at least the greater portion of the time she was perfectly normal and was so when she made the will.

In Succession of Ford, supra, where numerous cases are cited and reviewed, it was held that the fact that one is in an enfeebled condition both mentally and physically, and even wholly insane at times, does not make his will invalid if made during the existence of a lucid interval. In our opinion, the will made by Margaret Davey was vaild, and we so hold.

■ Counsel for the defendant interposed the plea that the judgment probating the last will of Margaret Davey was an absolute nullity because the presumptive heirs were not notified. This plea is without merit. It was definitely held in the case of Broussard et al. v. Hebert, 149 La. 309, 89 So. 14, that a judgment of probate cannot be annulled on the ground solely that it was rendered without notice to the presumptive heirs of the deceased; citing Thomas v. Blair, 111 La. 678, 35 So. 811.

■ Defendant further interposed the plea of misjoinder, the contention being that the executor of Margaret Davey's estate should have been made a party to this proceeding. In fact, it is contended that plaintiffs' remedy, if any they have, is one

against the executor of Margaret's estate. The answer is that the executor of Margaret's estate has filed its final account and has been discharged by the court. The residue of Margaret Davey's estate, of which her mother, the interdict, had the usufruct, was turned over by the executor to the curator of the interdict.

The remaining question is whether, under the circumstances here disclosed, plaintiffs have a cause of action against the administrator of Mrs. W. J. Davey's succession to enforce the payment of the special legacies left them by Margaret Davey.

While the plaintiffs alleged that the Succession of Mrs. W. J. Davey (who was the mother of Margaret Davey) was indebted unto them in a sum aggregating the amount of the special legacies, and pray for judgment in that amount, their counsel in brief concede, at page 62, that the succession is liable for only the value of the property it received from the Succession of Margaret Davey. But counsel for the succession say that the Succession of Mrs. W. J. Davey is not liable to plaintiffs in any sum because there is no law in Louisiana authorizing persons claiming to be legatees of one estate to compel another estate to pay such legacies, and only those who are sued in their quality as heirs can be held for debts and legacies; citing Civil Code, Arts. 1010–1013, 1421, and 1465. But those articles of the Code have no application to a case like this one.

The usufruct of Margaret Davey's estate, established by her will in favor of her mother, Mrs. W. J. Davey, terminated at the death of Mrs. Davey in 1931. Article 533 et seq. of the Civil Code, under the title "Of Usufruct, Use And Habitation", provide that, at the termination of the usufruct, the things of which the usufructuary had the enjoyment must be restored. The property belonging to the estate of Margaret Davey and of which Mrs. W. J. Davey, her mother, had the usufruct has not been restored but is now in possession of the administrator of the latter's succession. The record shows that the Hibernia Bank & Trust Company, the curator of Mrs. W. J. Davey, filed a final account of its curatorship and was discharged by the court, and that it turned over to the administrator of Mrs. Davey's succession all of the property of which she had the usufruct. The record further shows that the inventory made of the property belonging to the Succession of Mrs. W. J. Davey at the time an administrator of her succession was appointed included the property belonging to Margaret Davey's succession, of which Mrs. Davey had only the usufruct.

The administrator of Mrs. Davey's succession cannot keep this property and escape payment of the special legacies. The record shows that the bank, as curator of Mrs. Davey, always recognized and considered that, in as much as it had turned over to the administrator of Mrs. Davey's succession all the property of which Mrs. Davey had the usufruct, the administrator would be liable for the payment of the legacies, as it would have been had it retained the property after the termination of the usufruct. While the proceedings involved in this case are somewhat out

of the ordinary, yet, in our opinion, the administrator of the Succession of Mrs. Davey, under the circumstances, must now restore the things of which Mrs. Davey had the usufruct only, and to the extent of the value of those things the succession is liable to the legatees.

When the bank, as executor of Margaret's estate, sold the property to itself as curator of Mrs. W. J. Davey, the interdict, as heretofore explained in this opinion in detail, it treated the sale as a cash transaction in so far as Margaret's estate was concerned, and, when it filed its first account on August 20, 1929, the account showed:

Cash on hand (see Note 1).................... $32,019.62
Debts to be paid (see Note 2)................. 17,231.42

Balance (See Notes 1 and 2)................. $14,788.21

The bank's report, submitted in connection with this account, shows that other sums were added to this amount, so that the bank's final statement of the account was as follows:

Net value of estate pursuant to foregoing
account ..................................... $14,788.20
Pro rata of 1928 taxes attributable to Mary
Delmore Davey, consisting of one-half
the amount accrued to date of decedent's
death, and the remainder thereafter..... 1,473.13
1929 taxes attributable to Mary Delmore
Davey ...................................... 1,553.50
Interest on debts and mortgages since date
of death attributable to Mary Delmore
Davey ...................................... 383.97

Total claim of special legatees against estate of Mary Delmore Davey at her death $18,198.80

In January, 1932, the legatees, who are the plaintiffs in the present suit, ruled the Hibernia Bank & Trust Company, as executor of Margaret Davey's estate, to show cause why it should not file a final account and pay the legatees the sums due them

under decedent's will. The bank filed answer to the rule, in which it said, among other things:

"Appearer admits that heretofore it has had in its possession as Trustee for and curator of Mary Delmore Davey [Mrs. W. J. Davey], certain sums of money. Appearer avers that it has no duty, obligation or responsibility of any nature, sort or kind whatsoever, to account to movers, or any of them, for any such funds, but that, on the contrary, any such accounting is due solely and only to the duly qualified administrator of said Mary Delmore Davey. However, appearer avers that, contemporaneously with the making of this return, it is filing a final account as such Trustee and curator, which said final account is being filed in the proceedings entitled, 'Interdiction of Mrs. Mary Delmore Davey,' Number 158-318 on the docket of this Honorable Court. As will appear therefrom, any balance heretofore in the possession of appearer as such Trustee and curator has been paid to the administrator of Mrs. Mary Delmore Davey, and no balance is now in the hands of appearer in said capacities."

From the above, it appears that the books of the bank showed that it held the sum of $18,198.80 cash, which belonged to the estate of Margaret Davey, of which amount the interdict had the usufruct, and that on final settlement it turned this amount over to the administrator of Mrs. W. J. Davey's succession. The bank in its report above referred to mentions some minor adjustments which might have to be made. Apparently these were made, and the

amount turned over to the administrator of Mrs. Davey's succession was $18,131.29.

Article 549 of the Revised Civil Code reads as follows:

"Art. 549. Consumable Things. If the usufruct includes things, which can not be used without being expended or consumed, or without their substance being changed, the usufructuary has a right to dispose of them at his pleasure, but under the obligation of returning the same quantity, quality and value to the owner, or their estimated price, at the expiration of the usufruct."

The net result of all the transactions which took place with reference to the executorship of Margaret Davey's estate and the curatorship of Mrs. W. J. Davey, the interdict, is that the interdict had the usufruct of $18,131.29 belonging to Margaret's estate. This amount should have been returned to Margaret's estate by the curator at the expiration of the usufruct. If this had been done, the legatees under Margaret's will would have been entitled to payment of their legacies out of the sum thus returned. But, in as much as the sum was not returned but was delivered to the administrator of Mrs. Davey's estate, they are entitled to payment out of the Succession of Mrs. Davey to the extent, and to the extent only, of the amount of $18,131.29, this being the entire residuum of Margaret Davey's estate.

The will provided that, "Should for any reason my estate be insufficient to pay all these legacies in full, I desire that they be paid in proportion of the amounts be-

queathed". The total amount of the legacies was $33,000. The legacies due the plaintiffs in this suit amount to only $31,000, so that the total sum due the plaintiffs is 31/33 of $18,131.29, that sum to be divided among them in proportion to the amounts of their legacies.

For the reasons assigned, the judgment appealed from is reversed, and it is now ordered and decreed that these plaintiffs have judgment against the Succession of Mrs. W. J. Davey in the total sum of 31/33 of $18,131.29, the said sum to be divided among them in proportion to the amount of their legacies; all costs to be paid by the Succession of Mrs. W. J. Davey.