REGAN, Judge.
Plaintiff, Wilbert H. Johnson, a painter, instituted this suit against his employer, the defendant, Lone Star Cement Corporation, endeavoring to recover workmen’s compensation of $20.00 per week for a period of four hundred weeks. Plaintiff claimed that he was totally and permanently disabled as a result of severe burns incurred to both of his hands and left wrist on November 3, 1947, when he accidently contacted an exposed electrical wire while painting a “traveling crane” owned by the defendant.
Defendant answered admitting the accident and resulting injury, but denied that plaintiff was totally and permanently disabled or that his injuries militated against the resumption of his employment as a painter.
Upon the termination of the trial on the merits the court, a qua, awarded plaintiff compensation of $20.00 iper week for a period not to exceed four hundred weeks. The judgment further ordered that the plaintiff “submit to and have performed, by a competent surgeon of his choice, an operation upon his right hand, for the primary purpose of restoring the use of the ring finger of his right hand.”
In conformity with this order of the trial court, and within the prescribed period of time stipulated therein, plaintiff voluntarily submitted to the operation upon his hand.
When more than six months had elapsed since the foregoing judgment was signed, defendant filed a rule, the object of which, was to terminate further compensation payments to the plaintiff because of the successful removal of his disability, or, in the alternative, for a reduction of the compensation in view of the diminution of the disability. Plaintiff, in answering the rule, maintained that he was still handicapped by a total disability and unable to resume his employment as a painter.
From a judgment in favor of defendant making the rule absolute, and ordering the payments of compensation terminated, plaintiff has prosecuted this appeal.
The only question posed for our consideration is one of fact, and that is, whether the evidence adduced upon the trial of the rule sustains the judgment terminating compensation because plaintiff’s total disability had ceased to exist.
We have carefully examined the record and we are of the opinion that the findings of fact by the trial court are amply sustained by the evidence contained therein.
The judge, a quo, thoroughly analyzed the subject matter of this litigation in his written reasons for judgment which, in our opinion, encompass the case so fully that we adopt them as our own.
“The plaintiff, Wilbert H. Johnson, brought this . action to recover disability compensation from the defendant, Lone Star Cement Corporation, his former employer, alleging that he was totally and permanently disabled as a result of an accident which occurred on November 3, 1947, while he was engaged in his work at defendant’s cement manufacturing plant. The evidence presented showed that on said date he was painting certain of defendant’s mechanical equipment; that his left hand accidentally came in contact with an exposed live electrical wire; that at the same time his right hand was grasping an iron guard rail; that the electrical current from the wire passed through his body from his left hand at the point of *660 contact with the wire to his right hand at the point of contact with the iron guard rail which acted as a ground. Plaintiff suffered burns on both hands, and on his left wrist.
“Plaintiff was awarded judgment granting him compensation for total and permanent disability from the date of his injury and during his disability, but not to exceed a maximum period of four hundred (400) weeks. The judgment further ordered plaintiff (at the suggestion of plaintiff) ' to have performed upon his right hand an operation calculated to repair his said disability. After more than six months had elapsed from the signing of said judgment, the defendant brought this rule to have plaintiff’s compensation discontinued on the ground that his disability has ceased, or, in the alternative, to reduce compensation payments on the ground that his disability has diminished. Plaintiff maintains that he is still suffering total disability.
“It is necessary for a proper understanding of this matter to review both the evidence presented on the trial of the rule and the evidence presented when the case was first tried on the merits.
“The evidence first offered showed that plaintiff was a painter and that he was right-handed.
“The late Dr. H. S. Nothacker, formerly plant physician for defendant, testified that plaintiff’s injuries consisted of burns of both hands from the phalanges to the wrists, which burns he treated and which healed in about 2 months after the accident.
“Dr. Nathan Goldstein, physician, testified for the plaintiff that he examined plaintiff, and that at that time plaintiff had (1) two healed scars on his inside left wrist, (2) three healed scar formations on the palmar surface of his left thumb, and (3) a healed scar formation in the web and at the bases of his third and fourth fingers of his right hand, on the palmar side. He stated ■ that the last described scar formation had destroyed the normal web at that point. Furthermore, he believed said scar formation was encasing the tendons on the palmar side of the fourth finger; that because of such encasement plaintiff could not completely close or flex his fourth finger when making a fist, nor could he completely extend it. He said that he believed the web would ttiarve to be repaired and the tendons freed. Dr. Lawrence A. Strug, was qualified as an expert in Surgery and testified for plaintiff basically as did Dr. Goldstein except that he expressed belief that the flexor tendon of the fourth finger of plaintiff’s right hand had been severed by his burns and would have to be resutured. He found no impairment of the functioning of plaintiff’s left hand, but gave his opinion that plaintiff was disabled because he could not use his right hand to the extent necessary to be a painter. He described the need for an operation on plaintiff’s right hand and estimated the expense thereof.
“Dr. Waldemar Metz was qualified as ■an expert in Surgery and testified for defendant. He described plaintiff’s scars substantially as the other doctors had, but stated that the function of plaintiff’s hand had seemed satisfactory in 1948, when he -had last examined plaintiff. He then re-examined plaintiff in court and declared his opinion to be that the flexor tendon of the fourth finger of plaintiff’s right han|d was not severed but was probably encased in scar tissue; that the scar tissue was preventing full flexion and .that the tendon should be freed by an operation.
“The plaintiff testified that the poor functioning of his fourth finger impaired the whole function of his right hand.
“He described his grip as weak, which made him fearful to go on ladders. and scaffolds. He stated that his fourth finger protruded; that as a result he struck it often; that he suffered pain.
“The Court considered plaintiff to be disabled to paint by reason of the loss of function of 'his right hand occasioned by his inability to properly flex and extend the fourth finger. The operation ordered by the Court in the judgment which is rendered was conceived of as a means of *661 restoring the tendons of : said finger ■ to proper use.
“On the trial of this rule the evidence presented shows that in March 1949, plaintiff was operated on by Dr. Strug, whom he selected for the work. Dr. Strug testified that the tendon had been found to be not severed, but only encased in scar tissue; that he freed some and re-fashioned the web between the fourth and fifth fingers. He stated that the hand had recovered practically full power; that flex-ion and extension of the fourth finger was almost completely restored, leaving plaintiff with a minimal loss of function of the finger.
“He was unable to explain even this slight loss of function, suggesting that perhaps it resulted from lack of use. He stated that plaintiff could grasp a paint brush and use it without difficulty.’ He felt that the operation had been a success beyond what he had Hoped could be accomplished when he first recommended same. He conceded to plaintiff’s counsel that- it was possible that the tendon could again become involved in the tissue of the scar, but added that at the date, of testifying, over six months after the operation, he could see no evidence of such involvement and did not believe it would occur.
“Plaintiff again testified to weakness of the grip in his right hand. He exhibited a fist with the fourth finger not fully closed and said he could not close it. He contended that his hands tire after about one hour’s work and that thereafter they pain him if he continues to work; that he is afraid to stay on ladders or scaffolds be'cause he does not believe he has sufficient strength in his hands to protect himself from falling. He conceded that in fact he has not tried to paint anywhere but in his ■own home.
“Dr. Strug’s testimony directly opposed that of the plaintiff. While he would not -estimate in hours how long plaintiff could continuously work, a paint brush, he un-qualifiedly gave his opinion that plaintiff was no longer disabled to carry out the duties of his former'" occupation as a painter. He declared that plaintiff could be pretending that he cannot completely flex his finger, but added that the question of whether or not he is pretending is unimportant in light of how slight the apparent loss of flexion is, and since said apparent loss of- flexion is without discernible cause. Furthermore, the alleged loss of flexion combined with the relative unimportance of the fourth finger in the overall use of the hand, was declared to be insufficient to disable plaintiff to ipaint.
“Dr. Strug stated that plaintiff should feel no pain in this scars and that sensory tests indicate objectively that no pain is present. He insisted that his field of medicine requires him to be able to evaluate a man’s condition both medically and practically, and that such an evaluation of plaintiff by him was that plaintiff could resume his work. The Court holds with that conclusion.
“The 'Court does not believe that the cases cited by plaintiff’s counsel (Succession of Butterworth, 195 La. 115, 196 So. 39; and Finck v. Delmore, 192 La. 317, 188 So. 15) relative to conflicts between lay and medical testimony are applicable, for the reason that plaintiff’s testimony herein was almost wholly subjective, was entirely Unsupported and must necessarily be weighed in the light of his status as a party at interest. It was to be expected that he would testify-as he did.
“Dr. Strug, on the other hand, testified objectively and as an expert. His nonpartisan status was most apparent since he had originally testified to plaintiff’s disability, and on plaintiff’s behalf. Since Dr. Strug was uncontradicted in his postoperative testimony by any medical opinion whatsoever, it, would have - added little for defendant to have paraded other doctors across the witness stand for purposes of further preponderating the evidence. The burden of proving plaintiff’s -recovery from his disability was already carried by the testimony of this surgeon, who had been plaintiff’s own expert and key witness before performing the surgical operation, and who had been chosen by plaintiff himself for the performance of said operation.
*662 “For the foregoing reasons judgment will be rendered in favor of defendant, Lone Star Cement Corporation making absolute this rule and ordering that payments of compensation by defendant to plaintiff, Wilbert H. Johnson, be terminated.”
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.